**Lana Lea DAVISON, Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of Colorado, The City of Loveland Police Department, and CIRSA, Respondents.**

**Cheryl Mobley, Petitioner,**

v.

**The Industrial Claim Appeals Office of the State of Colorado and King Soopers, Respondents.**

Nos. 03SC179, 03SC83.

Supreme Court of Colorado, En Banc.

Feb. 9, 2004.

As Modified on Denial of Rehearing March 1, 2004.

1024

Steven U. Mullens, P.C., Andrew C. Gorgey, Steven U. Mullens, Colorado Springs, Colorado, Attorneys for Petitioner, Cheryl Mobley.

Jan A. Larsen, Fort Collins, Colorado, Attorney for Petitioner, Lana Lea Davison.

Ken Salazar, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent, Industrial Claim Appeals Office.

Weinberger & Serruto, P.C., Robert A. Weinberger, Kristin M. Murphy, Denver, Colorado, Attorneys for Respondent, King Soopers.

Nathan, Bremer, Dumm & Myers, P.C., Anne Smith Myers, Michelle N. Young, Denver, Colorado, Attorneys for Respondents, City of Loveland Police Department and CIRSA.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

Consolidating two cases for opinion, we interpret a section of the Workers' Compensation Act that awards benefits to a worker who is permanently disabled by a job-related psychological trauma. We granted certiorari on two cases in which claimants were denied workers' compensation benefits because they did not present expert medical or psychological testimony regarding both clauses of "mental impairment" as defined by section 8–

41–301(2)(a), 3 C.R.S. (2003).[1] The two clauses of the "mental impairment" definition require the injury: 1) to be "a recognized, permanent disability arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury," and 2) consist of a "psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances." There is no dispute that section 8–41–301(2)(a) requires a claim of mental impairment to be proved by evidence "supported by" the testimony of a licensed physician or psychologist. Rather, what is at issue in both of these cases is whether such expert testimony must be sufficient in itself to prove all elements of mental impairment, as defined by the statute.[2]

In the first case, *Davison v. Industrial Claim Appeals Office*, 72 P.3d 389 (Colo.App. 2003), the Administrative Law Judge ("ALJ") found that the claimant, Lana Lea Davison, met her burden of proof under section 8–41–301(2)(a). § 8–41–301(2)(a), 3 C.R.S. (2003). However, the Industrial Claim Appeals Office ("ICAO") reversed, concluding the evidence was insufficient to support an award of benefits because the claimant's expert did not testify as to the second clause of the "mental impairment" definition. The court of appeals affirmed the ICAO's denial of the claim. *Id.*

In the second case, *Mobley v. Industrial Claim Appeals Office*, W.C. No. 4–359–644, 2003 WL 306131 (Colo.App. Feb.13, 2003), the ALJ and the ICAO similarly denied Cheryl Mobley's workers' compensation claim because she did not present expert testimony supporting the conclusion that the events at issue would evoke symptoms of distress in a worker similarly situated. The court of appeals affirmed, finding that section 8–41–301(2)(a) clearly imposes the requirement that expert testimony establish both statutory clauses of a mental impairment claim. *Id.*

We hold that under section 8–41–301(2)(a), a medical or psychological expert witness must testify as to those matters within his or her expertise. Specifically, the expert must establish that the claimant has a recognized, permanent disability resulting from a psychologically traumatic event. A Claimant may introduce any competent evidence, including non-expert or expert testimony, to prove that an injury arose in the course and scope of employment, was generally outside a worker's usual experience, or would evoke significant distress in a similarly situated worker. We therefore reverse the judgments of the court of appeals in both cases, and remand them for further proceedings consistent with this opinion.

## II. Facts and Proceedings Below

### A. The Davison Case

The first case involves a workers' compensation claim for death benefits. Claimant Lana Lea Davison is the widow of David Davison, a captain in the City of Loveland Police Department ("LPD") who committed suicide in 1996. Davison filed a workers' compensation claim shortly thereafter, alleging her husband's depression and suicide stemmed from job-related stress.

For approximately three years, as captain of the Operations Division of the LPD, David Davison had responsibility for dealing with all personnel issues, which required him to impose discipline on other officers when necessary. This became a source of significant stress for him, resulting in untreated, clinical depression. Shortly before his death, Cap-

---

1. The statute in effect at the time Cheryl Mobley filed her claim was section 8–41–301(2)(a), 3 C.R.S. (1997); at the time Lana Lea Davison filed her claim, the statute in effect was section 8–41–301(2)(a), 3 C.R.S. (1996). In 1999, the statute was amended. However, the second clause of the "mental impairment" definition remained unchanged. For convenience, we will refer in this opinion to the current version of the statute, section 8–41–301(2)(a), C.R.S. (2003).

2. We granted certiorari in both cases on the following issue: "Whether section 8–41–301(2)(a), 3 C.R.S. (2002), requires a workers' compensation claimant to present expert medical or psychological testimony regarding the second clause of the "mental impairment" definition, namely whether the injury "consists of a psychologically traumatic event that is generally outside a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances."

tain Davison's distress became particularly acute when he learned that police officers under his command had engaged in improper conduct during a sting operation intended to apprehend prostitutes.[3] Also contributing to Captain Davison's deepening and ultimately psychotic depression during this time period were the death of his brother in 1994 and his wife's diagnosis with hepatitis in 1995.

In support of her claim, Davison presented the expert testimony of Dr. Robert David Miller, a licensed psychiatrist. Dr. Miller assessed Captain Davison's psychiatric condition prior to his death, and diagnosed an occupational disease of depression. Specifically, Dr. Miller opined that the precipitating and chief factor in the development of Captain Davison's depression was the stress caused by his employment, which had been building over four to five years. Captain Davison's supervisor, Chief Tom Wagoner, also testified. During cross-examination, Chief Wagoner acknowledged that the demands on Captain Davison, had he experienced them himself, would have caused him to experience significant stress.

The ICAO remanded this case twice, the first time after the ALJ denied the claim, and the second time after death benefits were awarded. Addressing the second clause of the "mental impairment" definition, the ALJ concluded that while other factors were in play, Captain Davison's depression was principally caused by the stress of his job at the LPD. The ALJ further found that the type of job pressures he experienced were unique, outside a police captain's usual experience, and would evoke significant symptoms of distress in a similarly situated police captain.

The ICAO reversed and denied Davison benefits, concluding that she failed to prove her claim because no medical or psychological expert testified as to the second clause of section 8–41–301(2)(a), namely whether Captain Davison experienced a traumatic event that would evoke significant symptoms of distress in a worker in similar circumstances.

The court of appeals affirmed the ICAO decision, rejecting Davison's argument that physicians and psychologists are unequipped to testify as to the usual experiences of workers in various types of employment. The court held: "Because we cannot say that such topics are necessarily beyond the expertise or specialized knowledge of physicians or psychologists, we apply the statute as written." The court of appeals held that section 8–41–301(2)(a) clearly requires a medical or psychological expert to testify as to both clauses of mental impairment, as defined by the statute. *Davison v. Indus. Claim Appeals Office*, 72 P.3d 389, 391 (Colo.App. 2003). The court held this requirement, which imposes a high burden of proof on mental impairment claims, was consistent with the legislative intent to eliminate frivolous claims.

### B. The Mobley Case

Claimant Cheryl Mobley, a pharmacist employed by the King Soopers grocery store chain, was called to a meeting with her store manager and two security officers in August 1997. As she reached the top of the stairs on her way to the meeting room, one of the security officers allegedly "bumped" her, startling her and causing her to almost fall backward down the stairs. During the meeting, Mobley claims the meeting room was locked and that she was not permitted to leave. Mobley testified that she was initially unaware of the purpose of the meeting, but asked for a union representative if it was disciplinary in nature. At that point, Mobley claims the same security officer who bumped her became agitated, and banged his fists on the table. The store manager then told Mobley to inform her union representative that the meeting concerned an investigation involving her "time card irregularities." Ultimately, when no union representative could be found, the manager terminated the meeting.[4]

---

**3.** A few months before his death, in January 1996, Captain Davison became captain over the Services Division. As Services Captain, Captain Davison remained responsible for certain disciplinary actions, including the discipline of offi-

cers improperly involved in the prostitution sting.

**4.** Mobley later disproved the claim of timecard irregularities in a wrongful termination arbitra-

Shortly after the meeting, Mobley experienced trouble breathing and tightness in her chest. She contacted her physician, Dr. Bernard Gipson, who advised her to report to the emergency room. After several hours of observation, Mobley's treating physician diagnosed a stress reaction, but advised that she follow up with her own doctor. Upon evaluating Mobley, Dr. Gipson filled out a disability certificate stating she was totally incapacitated and should not return to work until her symptoms could be further evaluated. Mobley's treating psychiatrist, Dr. Ruth Fuller, subsequently diagnosed Mobley with "major depression, single episode without psychosis, severe" and post-traumatic stress disorder related to work.

Mobley filed a workers' compensation claim for mental impairment benefits. Hearings were subsequently held before an ALJ. Mobley presented the testimony of four medical experts, who testified regarding Mobley's medical and psychological problems arising from the incident at work. One of the experts, Dr. Kenneth Gamblin, submitted his opinion that:

> Ms. Mobley has developed post traumatic stress disorder as a result of a work-related incident on August 21, 1997. . . . In my opinion, the stress leading to the development of post traumatic stress disorder was over and above that which could be expected by a person working in her capacity, thus qualifying her for workers' compensation benefits.

▆ After the last hearing, the ALJ decided to keep Mobley's case-in-chief open for the limited purpose of allowing the parties to introduce portions of the transcript from the parallel wrongful termination arbitration arising from the same incident. However, before the deadline for making the designations arrived, King Soopers filed a motion to dismiss. The ALJ granted the motion, ruling that Mobley had failed to meet her burden of proof under section 8–41–301(2)(a).

The ALJ specifically found that she did not produce sufficient evidence from a licensed physician or psychologist to support her claim that the injury consisted of a psychologically traumatic event that would evoke significant symptoms of distress in a worker similarly situated.[5]

On review, the ICAO affirmed the dismissal of Mobley's claim and held the ALJ correctly determined Mobley was required to present the oral or written opinion of a licensed physician or psychologist to support the conclusion that the events at issue would evoke symptoms of distress in a worker similarly situated. The ICAO further affirmed the ALJ's ruling that no such evidence was presented, and concluded that the ALJ's dismissal of the claim before affording Mobley an opportunity to make reference to transcripts of the arbitration hearing was harmless.

The court of appeals affirmed the ICAO decision, holding that: (1) the ALJ had properly applied the requirements of section 8–41–301(2)(a); (2) even if the ALJ had erred by ruling on the motion to dismiss before the transcript references had been submitted, such error was harmless; and (3) the ALJ's refusal to consider the arbitrator's decision in the wrongful termination proceeding did not amount to an abuse of discretion warranting reversal.

### III. Analysis

▆ We hold that section 8–41–301(2)(a) does not categorically require a claimant to provide expert medical or psychological testimony to prove all elements of the second clause of the "mental impairment" definition, which asks whether the injury "consists of a psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances." While expert testimony must support a

---

tion. *In re AFL–CIO v. King Soopers, Inc.,* F.M.C.S. Case No. 98–07363.

5. The ALJ applied an objective standard based upon the "reasonable worker" to prove the requirements of section 8–41–301(2)(a); the objective standard is applied because, as articulated

by *Tomsha v. City of Colorado Springs,* 856 P.2d 13 (Colo.App.1992), part of the purpose of the statute is to eliminate claims based upon idiosyncratic responses to non-stressful or mildly stressful occurrences that would not produce significant distress in a reasonable worker.

claim, both expert and non-expert testimony is admissible to prove the claim. Expert testimony must prove that the claimant suffered a recognized, permanent disability as the result of a psychologically traumatic event. Other competent evidence is admissible to prove that the injury was outside the worker's usual experience, and that similarly situated workers would have reacted similarly. We find this interpretation to be consistent with the language of the statute, prior precedent interpreting that language, and legislative intent.

### A. Standard of Review

■ We review an administrative agency's decision under an abuse of discretion standard. *See Indus. Claim Appeals Office v. Orth,* 965 P.2d 1246, 1255 (Colo.1998); *Coates, Reid & Waldron v. Vigil,* 856 P.2d 850, 856 (Colo.1993). "Although we defer to the agency's determinations of fact, we review its conclusions of law de novo." *Colo. Dept. of Labor and Employment v. Esser,* 30 P.3d 189, 193 (Colo.2001). We also "give considerable weight to an agency's interpretation of its own enabling statute"; however, we set aside actions or interpretations that are clearly erroneous, arbitrary, or otherwise not in accordance with the law. *Id.* at 194; *CF & I Steel, L.P. v. Pub. Utils. Comm'n,* 949 P.2d 577, 585 (Colo.1997).

■ These cases present a question of statutory construction. In interpreting a statute, a reviewing court must determine and put into effect the intent of the legislature. *People v. Banks,* 9 P.3d 1125, 1127 (Colo.2000). We start with the language of the statute. If its language is clear, we interpret the statute according to its plain and ordinary meaning. *Vaughan v. McMinn,* 945 P.2d 404, 408 (Colo.1997). In so doing, we construe the statute as a whole, in an effort to give "consistent, harmonious and sensible effect to all its parts." *Carlson v. Ferris,* 85 P.3d 504, 508, 2003 WL 22831923, at *3 (Colo. Dec.1, 2003). In the workers' compensation context, the General Assembly expressly declared its legislative intent:

> It is the intent of the general assembly that the "Workers' Compensation Act of

Colorado" be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

§ 8–40–102(1), 3 C.R.S. (2003).

■ We are obliged to effectuate this legislative intent in interpreting the meaning of section 8–41–301(2)(a). As we have often noted, the Workers' Compensation Act is intended to be "remedial and beneficent in purpose, and should be liberally construed" in order to accomplish these goals. *Colo. Counties, Inc. v. Davis,* 801 P.2d 10, 11 (Colo. App.1990), *aff'd sub nom. County Workers Comp. Pool v. Davis,* 817 P.2d 521 (Colo. 1991). However, findings of fact must be construed neutrally. *See* § 8–43–201, 3 C.R.S. (2003) (stating that "facts in a workers' compensation case shall not be interpreted liberally in favor of either the rights of the injured worker or the rights of the employer").

■ In the cases now before us, we must balance liberal construction of the workers' compensation scheme against the legislative purpose behind the enhanced evidentiary requirements for mental impairment claims in section 8–41–301(2). The burden is heightened in mental impairment claims in order to help prevent frivolous or improper claims. *See McCallum v. Dana's Housekeeping,* 940 P.2d 1022, 1024 (Colo. App.1996); *Tomsha v. City of Colorado Springs,* 856 P.2d 13, 15 (Colo.App.1992). In drafting section 8–41–301(2)(a), the General Assembly purposely differentiated between cases in which physical injury causes mental impairment ("mental-physical") and those where mental impairment follows solely an emotional trauma ("mental-mental"). *Oberle v. Indus. Claim Appeals Office,* 919 P.2d 918, 920 (Colo.App.1996). Because "mental-mental" claims are less subject to direct proof, frivolous claims are more difficult to detect. Accordingly, there is a heightened standard of proof; only these claims require testimony

of a licensed physician or psychologist. *Id.* at 921.

## B. The Definition of Mental Impairment in Section 8–41–301(2)(a)

 Section 8–41–301 lays out the conditions of recovery for all workers' compensation claims, subjecting mental impairment claims to special evidentiary requirements. It states in relevant part:

> A claim of mental impairment must be proven by evidence supported by the testimony of a licensed physician or psychologist. For purposes of this subsection (2), "mental impairment" means a recognized, permanent disability arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and consists of a *psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances.*

§ 8–41–301(2)(a) (emphasis added).

The definition of "mental impairment" consists of two clauses; each clause contains three elements. The first clause requires a claimant to prove the injury consists of: 1) a recognized, permanent disability that 2) arises from an accidental injury involving no physical injury, and 3) arises out of the course and scope of employment. The second clause further requires the claimant to prove the injury is: 1) a psychologically traumatic event, 2) generally outside a worker's usual experience, and 3) that would evoke significant symptoms of distress in a similarly situated worker. The second clause of the "mental impairment" definition is at issue here.

In the cases before us as well as on previous occasions, the ICAO has interpreted section 8–41–301(2)(a) to require a mental impairment claimant to produce expert medical or psychological testimony regarding whether the injury is generally outside a worker's usual experience and would cause distress in a similarly situated worker. *See Azu v. Vencor Hosp.,* W.C. No. 4–265–994, 1997 WL 846931 (Colo.Ind.Cl.App.Off. Aug. 18, 1997); *Martinez v. Dept. of Corr.,* W.C. No. 4–202–359, 1996 WL 481214 (Colo.Ind.Cl.App.Off. July 2, 1996); *Brown v. Family Inn of Colorado Springs,* W.C. No. 4–271–352, 1996 WL 729823 (Colo.Ind.Cl.App.Off. Nov. 12, 1996). In both Davison's and Mobley's cases, the court of appeals agreed. *Davison v. Indus. Claim Appeals Office,* 72 P.3d 389 (Colo.App. 2003); *Mobley v. Indus. Claim Appeals Office,* W.C. No. 4–259–644, 2003 WL 306131 (Colo.App. Feb.13, 2003).

In *Colorado Department of Labor and Employment v. Esser,* we considered the meaning of the first sentence of section 8–41–301(2)(a), which requires that any request for workers' compensation arising out of a claim of mental impairment be "proven by evidence supported by the testimony of a licensed physician or psychologist." 30 P.3d 189 (Colo.2001). We interpreted the word "testimony" broadly to encompass not only oral testimony, but written testimony of a licensed physician or psychologist, including written reports, statements, notes, or other documents relevant to the mental impairment claim. *Id.* at 195.

However, we have not before addressed the meaning of the second sentence of section 8–41–301(2)(a), defining "mental impairment," which is at issue in these cases. We do so now, employing traditional rules of statutory construction.

Respondents contend section 8–41–301(2)(a) imposes a clear requirement that expert testimony establish all elements of a mental impairment claim, including the provision that the traumatic event would evoke significant symptoms of distress in a similarly situated worker. Petitioners, on the other hand, argue the second clause of the "mental impairment" definition may not be susceptible to medical or psychological opinion, and therefore expert medical or psychological testimony cannot always be required to support it. Petitioners assert that a physician or psychologist would not necessarily have the expertise to explain a "worker's usual experience" or what it means to be a "worker in similar circumstances."

In construing section 8–41–301(2)(a), we begin with the ordinary meaning of its words. The statute requires a claim of mental im-

pairment to be "proven by evidence *supported by* the testimony of a licensed physician or psychologist" (emphasis added). We find the legislature's use of the word "supported" to be significant, as the statute could have simply stated that a claim of mental impairment must be "proven" by the testimony of a licensed physician or psychologist. Therefore, we must determine what it means for evidence to be "supported by" testimony.

The dictionary definition of "support" is to "serve as the foundation for," or "to corroborate." *Webster's Encyclopedic Unabridged Dictionary of the English Language,* 1912–13 (deluxe ed.2001). A foundation is "the basis or groundwork of anything." *Id.* at 756. To corroborate is "to make more certain." *Id.* at 455.

In the context of section 8–41–301(2)(a), we construe the language "supported by" to mean that expert testimony must serve as the foundation for or it must corroborate the claim of mental impairment. The language does not require that *all* evidence regarding mental impairment must be proved through expert testimony. Corroborative or foundational testimony is, by definition, not exclusive, and in the context of this statute, the legislature's choice of language indicates that evidence other than expert testimony is admissible to prove a claim of mental impairment. Therefore, we hold that the evidence presented must include expert testimony only as to those elements of the "mental impairment" definition that fall within the purview of the licensed physician's or psychologist's expertise. A claimant may introduce other competent evidence to prove any aspects of the claim that are not susceptible to expert medical or psychological opinion.

 In reaching our holding, we consider the role of an expert in a workers' compensation case. To qualify as an expert, a witness must have "greater knowledge, skill and information than the fact-finder would normally possess." *Sims v. Indus. Claim Appeals Office,* 797 P.2d 777, 779 (Colo.App.1990). The ALJ has the discretion to determine whether a witness offered as an expert meets these requirements. *Id.* In determining the compensability of a claim, an ALJ is not bound by medical opinion, even if

it is unrefuted. *Indus. Comm'n v. Riley,* 165 Colo. 586, 591, 441 P.2d 3, 5 (1968). The ALJ is the sole arbiter of conflicting medical evidence, and the ALJ's factual findings are binding on appeal if they are supported by substantial evidence or plausible inferences from the record. *Postlewait v. Midwest Barricade,* 905 P.2d 21, 24 (Colo.App.1995); 17 Douglas R. Phillips & Susan D. Phillips, *Colorado Practice: Colorado Workers' Compensation Practice and Procedure,* § 15.87, at 717, § 15.88, at 719 (1998).

 Respondents' interpretation would effectively read the "supported by" language out of the statute, because they contend every element of the "mental impairment" claim must be proven by the testimony of a licensed physician or psychologist. Under this reading, potentially credible claims of mental impairment could be disqualified by virtue of the fact that no medical or psychological expert is qualified to testify about a particular claimant's field of employment. We decline to adopt such an interpretation. We agree that expert medical or psychological opinion must prove that the claimant suffered a psychologically traumatic event. However, lay or expert testimony, or some combination of the two, may be necessary to prove that the traumatic event is outside a worker's usual experience and would cause a similar reaction in a similarly situated worker. Undoubtedly, there are relevant psychological studies regarding *certain* occupations; it is safe to say, however, that there are many occupations that have never been studied. We have found no evidence that the legislature intended to exclude mental impairment claims by persons employed in those occupations.

Moreover, we cannot read section 8–41–301(2)(a) to require a licensed physician or psychologist to provide opinions on a subject that falls outside his or her expertise. Whether a psychologically traumatic event is generally outside a worker's experience is something about which a medical expert may not have the background to testify. Indeed in some cases, to testify on matters outside the expert's area of expertise would be contrary to the expert's professional duties and responsibilities. *See, e.g.,* § 12–43–202, 4

C.R.S. (2003) ("Notwithstanding any other provision of this article, no licensee, registrant, or unlicensed psychotherapist is authorized to practice outside of or beyond his or her area of training, experience, or competence.").

■ Our interpretation of the second clause of the "mental impairment" definition is both informed and supported by our reading of the first. We granted certiorari in these cases in order to clarify the second clause of the "mental impairment" definition. However, the two clauses of the definition are necessarily intertwined, and therefore we consider the second clause in light of the first. One of the requirements of the first clause is that the injury must arise out of the course and scope of the claimant's employment; this element, on its face, does not require medical or psychological testimony. Non-expert evidence is admissible to prove this element because we recognize a medical or psychological expert may not be qualified to testify as to the nature of a claimant's employment or whether the injury occurred in the course of that employment. This element is a routine requirement of all workers' compensation claims, including those involving physical injury, which, unlike mental impairment claims, do not require the introduction of expert testimony.[6]

We read the second clause of the "mental impairment" definition to be consistent with the first, and find that similarly, a medical or psychological expert may not be qualified to testify as to a "worker's usual experience" or what it means to be a "worker in similar circumstances." Therefore, we allow that claimant to introduce other competent evidence to prove those elements. *Esser* also supports our interpretation of section 8–41–301(2)(a). In that case, in construing the statute, we differentiated between the words "ev-

idence" and "testimony," holding the former to broadly encompass the latter: "the intent of the provision is that an impairment claim must be supported by the licensed physician's or psychologist's own words, *in addition to* whatever other evidence the claimant presents on behalf of the claim." 30 P.3d at 196 (emphasis added). This interpretation is consistent with our holding today, as we recognize that evidence other than expert testimony may be appropriate to prove the second clause of "mental impairment."

Finally, we find our interpretation to be consistent with the legislature's intent that 8–41–301(2) help to eliminate frivolous claims. The statutory framework itself, which imposes numerous requirements and limitations on mental impairment claims that do not apply to claims based on physical injuries, helps protect employers from false or frivolous claims. It makes sense to require expert medical or psychological testimony on those elements of "mental impairment" that fall within the expert's area of expertise. However, requiring expert testimony as to those elements with non-medical aspects in no way forwards the goal of eliminating frivolous claims.

## C. The Evidence in These Cases

We have found that a claimant need not produce expert medical or psychological testimony regarding the second clause of the "mental impairment" claim if it falls outside the expertise of the expert witness. However, a claimant still must meet his or her burden under section 8–41–301(2)(a), if not through expert testimony, then through other competent evidence that a psychologically traumatic event is generally outside a worker's usual experience and would evoke significant symptoms of distress in a similarly situated worker.[7]

---

**6.** In deciding whether an injury arose out of the course of employment, courts will look at the totality of the circumstances in evaluating whether there is a sufficient nexus between the employment and the injury; the introduction of expert testimony is not necessary to this determination. *See In re Question Submitted by the U.S. Court of Appeals for the Tenth Circuit*, 759 P.2d 17, 20 (Colo.1988); *Portofino Apartments v. Indus. Claim Appeals Office*, 789 P.2d 1117, 1119 (Colo.

App.1990); *In re Death of McLaughlin*, 728 P.2d 337, 340 (Colo.App.1986).

**7.** We note that in both Davison's and Mobley's cases, the claimants did introduce some evidence to prove the event was generally outside a worker's experience and would evoke significant symptoms of distress in a similarly situated worker. In Davison's case, Chief Tom Wagoner testified that the demands on Captain Davison

Because this decision defines the standard for section 8–41–301(2)(a) for the first time, we remand both cases so that the claimants may have the opportunity to present evidence in accordance with it.

### IV. Conclusion

The ALJ and ICAO should not have dismissed Mobley and Davison's claims simply based upon their failures to present expert medical or psychological testimony regarding all elements of the second clause of the "mental impairment" definition, which asks whether an injury "consists of a psychologically traumatic event generally outside a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances." Expert testimony is necessary to prove that the event was psychologically traumatic, but the other elements can be proved by lay and/or expert evidence. Accordingly, we reverse the judgments of the court of appeals in both cases. We remand these cases to the court of appeals with instructions to return them to the ICAO to rehear the claims, and for further proceedings consistent with this opinion.

Justice KOURLIS dissents, and Justice COATS joins in the dissent.

Justice KOURLIS dissenting:

Although I agree with the majority that, for purposes of section 8–41–301, 3 C.R.S. (2003), "mental impairment" need only be supported—and not necessarily "proved"—by the testimony of a physician or psychologist, I conclude that the entirety of the statute's definition of "mental impairment" is subject to that requirement. Because I would not limit the statute's evidentiary requirement to selected elements of the statute's "mental impairment" definition alone, I respectfully dissent. I would, therefore, affirm the court of appeals' decisions in both of these cases.

would have caused Wagoner to experience significant stress. In Mobley's case, Dr. Kenneth Gamblin, submitted his opinion that the triggering event in Mobley's case was over and above that which could be expected by a person working in her capacity. We remand these cases not

### I. Facts

#### A. *Davison v. ICAO*

The first case in this appeal involves workers' compensation benefits sought by the widow of Captain David Davison following his suicide. At the time of Captain Davison's death, he was in charge of the Services Division of the Loveland Police Department (the "Department"). This responsibility entailed a significant amount of personnel work in the Department. Captain Davison had assumed this particular position about four months before he died.

In the years leading up to his death, Captain Davison had experienced a number of unfortunate heartaches, both personal and professional. In April, 1994, his brother died unexpectedly and in October, 1995, his wife was diagnosed with a life-long illness. On or about April 4, 1996, Captain Davison and his supervisor, Chief of Police Tom Wagoner, discovered that several officers, while they were pursuing a sting operation regarding a prostitution ring, had engaged in sexual acts with the prostitutes they were investigating. The incident attracted a significant amount of media attention.

On April 11, 1996, Captain Davison was given the responsibility of disciplining the officers that had acted inappropriately during the sting. After Captain Davison had expressed misgivings about handling the discipline process alone, Chief Wagoner agreed to share the responsibility. Then, troubled by the mounting stresses of his job, and suffering severe psychotic depression, Captain Davison took his own life on April 16, 1996.

Shortly after Captain Davison's suicide, his widow, Lana Lea Davison, filed a claim for workers' compensation benefits, asserting that her husband's psychological injury and resulting suicide were caused by job-related stress, generally compensable under workers' compensation provisions. At an adminis-

only to allow the claimants the opportunity to present new evidence in accordance with this decision, but also so that the ALJ may evaluate the evidence already presented by the claimants to prove the elements of the statute.

trative hearing on her claim before an administrative law judge (ALJ), Davison presented the testimony of Dr. Robert David Miller, a licensed psychiatrist. Dr. Miller testified that Captain Davison had been suffering from depression for about four or five years before his death and that the stress from his job was the main cause of that death. The ALJ approved the claim and made findings under section 8–41–301—the statutory section that itemizes the "conditions of recovery" for an injury of this type. The ALJ determined that Captain Davison's "depression was principally caused by the stress of his job at the [Loveland Police Department, and t]he type of job pressures experienced by the captain were unique, outside a worker's usual experience, and would evoke significant symptoms of distress in a worker in similar circumstances."

Upon appeal, the Industrial Claims Appeal Office (ICAO) reversed the ALJ's decision, concluding that Davison had failed to produce testimony of a licensed physician or psychologist showing that her husband's injury consisted of "a psychologically traumatic event that is generally outside of a worker's usual experience and would [have evoked] significant symptoms of distress in a worker in similar circumstances," as required by section 8–41–301(2)(a).

On appeal to the court of appeals, Davison argued that physicians and psychologists are not capable of testifying as to that portion of the statute, and, hence, section 8–41–301(2)(a) should not be read to require such testimony. The court of appeals affirmed the ICAO's reversal, stating that "[b]ecause we cannot say that such topics are necessarily beyond the expertise or specialized knowledge of physicians or psychologists, we apply the statute as written." *Davison v. ICAO*, 72 P.3d 389, 391 (Colo.App.2003). Davison appeals to this court, arguing that the court of appeals erred in its interpretation of section 8–41–301(2)(a).

### B. *Mobley v. ICAO*

Also included in this consolidated opinion is the appeal of Cheryl Mobley, who had worked as a pharmacist at King Soopers for nearly twenty years before her employment was terminated. On August 21, 1997, Mobley was summoned to a disciplinary meeting with the store manager and two security officers to discuss possible "time card irregularities." Mobley claims that she was "bumped" by one of the attending security officers on the way to the meeting and that during the meeting, she was made to feel intimidated and isolated. After Mobley requested union representation, the manager ended the meeting because he could not locate a union representative in time. After the meeting, Mobley did not return to work.

Shortly after the incident, Mobley saw a psychiatrist, Dr. Fuller, who diagnosed her with "single episode depression." Dr. Fuller determined that the condition resulted from Mobley's employment and restricted her from working at King Soopers. Mobley later filed a claim for workers' compensation benefits on the basis of a work-related mental impairment.

Hearings on Mobley's claim began on January 22, 2001. On July 17, 2001, the ALJ held that Mobley's case-in-chief was closed, except that the ALJ agreed to consider specific evidence from an arbitration hearing that addressed whether Mobley was wrongfully discharged under a collective bargaining agreement. King Soopers then moved to dismiss the claim on the grounds that Mobley had failed to introduce any testimony by a physician or psychologist showing that the incident allegedly causing her depression would "evoke significant symptoms of distress in a worker in similar circumstances." The ALJ agreed and dismissed the claim.

Mobley appealed the ALJ's dismissal to the ICAO. The ICAO agreed with the ALJ that the statute required Mobley to submit testimony, as that term is understood in *Colo. Dep't Of Labor and Employment v. Esser*, 30 P.3d 189 (Colo.2001), of a licensed physician or psychologist, supporting the conclusion that the event in question would "evoke significant symptoms of distress in a worker in similar circumstances." Accordingly, the ICAO upheld the ALJ's dismissal.

On appeal to the court of appeals, Mobley argued that the ICAO had erroneously interpreted section 8–41–301(2)(a)'s evidentiary

requirement. The court of appeals, however, upheld the ICAO's ruling in an unpublished opinion and this appeal ensued.

## II. Analysis

Section 8–41–301(2)(a) states in pertinent part that

[a] claim of mental impairment must be proven by evidence supported by the testimony of a licensed physician or psychologist. For purposes of this subsection (2), "mental impairment" means a recognized, permanent disability arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury *and consists of a psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances.*

(emphasis added). Mobley and Davison (Petitioners) do not dispute that a plain reading of this statute requires physician or psychologist testimony to support the first part of the statute's definition—"a recognized, permanent disability arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury." However, they would have this court draw a line in the statute, eliminating any requirement that a physician's or psychologist's testimony support the rest of the statute's "mental impairment" definition. Petitioners argue it would be illogical to require medical testimony for the remaining portion of the statute's definition because, they contend, whether an event is outside of a worker's usual experience and would evoke significant symptoms of distress in a similarly situated worker is only susceptible to proof by non-medical testimony. Specifically, Mobley argues that a "disability," of which "mental impairment" is an example, can only be proved through non-medical means. However, no one disputes that Mobley's mental impairment is disabling—only whether her particular disability is a compensable "mental impairment" under section 8–41–301.

Davison contends that a plain reading of the statute requires only that expert medical

testimony "support" a finding of mental impairment in the sense that the medical testimony must support at least some part—but not all—of the statutory definition of "mental impairment."

### A. Expert Testimony Need Only "Support"—and Not Necessarily "Prove"—"Mental Impairment"

I agree with the majority that in order to prove a "mental impairment" for purposes of section 8–41–301, a claimant need only present the testimony of a licensed physician or psychologist that tends to support a finding of "mental impairment," as defined in the statute. The first sentence of section 8–41–301(2)(a) states that "[a] claim of mental impairment must be *proven* by evidence *supported* by the testimony of a licensed physician or psychologist." (emphasis added). As the majority correctly notes, a plain reading of this first sentence indicates that the evidence used to prove a claim of mental impairment need only be supported by—rather than wholly consist of—expert medical testimony. This standard allows a plaintiff to carry her burden of proof with non-expert evidence, for example, as to the nature of her employment and whether the injury occurred in the course of employment, while still requiring expert testimony to buttress the claim in order to prevent recovery on frivolous claims, *Oberle v. ICAO,* 919 P.2d 918, 920 (Colo.App.1996).

### B. Expert Medical Testimony Required to Prove the Entire Statutory Definition of "Mental Impairment"

However, the majority reads the statute to require expert medical testimony only as to some elements of mental impairment and not as to others. Maj. Op. at 1031–1032. Contrary to the majority, I do not view section 8–41–301(2)(a)'s evidentiary requirement as permitting that selective approach. Rather, I would begin by noting the statute's obvious purpose: namely, to prevent frivolous claims related to mental injury brought on by emotional trauma that are not subject to direct proof, *Tomsha v. City of Colo. Springs.,* 856 P.2d 13, 15 (Colo.App.1992). The plain language of section 8–41–301(2)(a) clearly re-

quires medical expert testimony to support a finding of "mental impairment" as defined by 8–41–301(2)(a) and makes no distinction among the elements of mental impairment that must be so supported.

As in construing any statute, this court must give effect to legislative intent and we must do so by first applying the plain language of the statute. *Colo. Dep't·of Revenue v. Garner,* 66 P.3d 106, 109 (Colo.2003). We must also construe all terms of a statute harmoniously, avoiding a strained or forced construction of any of its terms. *Fogg v. Macaluso,* 892 P.2d 271, 274 (Colo.1995). Only when the statute is ambiguous should we resort to other principles of statutory construction. *DeHerrera v. Sentry Ins. Co.,* 30 P.3d 167, 171 (Colo.2001); *Vaughan v. McMinn,* 945 P.2d 404, 408 (Colo.1997). Under no circumstances may we write provisions into statutes that were clearly not intended by the legislature. *Schlessinger v. Schlessinger,* 796 P.2d 1385, 1389 (Colo.1990).

The issue before the court in these cases is simply whether a claimant must introduce expert testimony in support of the "second clause" of the definition of "mental impairment" whether the injury "consists of a psychologically traumatic event that is naturally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances." Davison's and Mobley's claims were dismissed specifically because they failed to introduce expert testimony on that portion of the statutory definition.

I first take issue with the claimants' argument that the sentence can be bifurcated into a "first clause" and a "second clause." The "second clause" begins in the middle of a single descriptive phrase—"a recognized, permanent disability arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury *and consists of a psychologically traumatic event.*" § 8–41–301(2)(a)(emphasis added). In my view, neither the language nor the grammatical construction of the statute would support an interpretative division that would invoke expert testimony as to a portion of the phrase and not as to the balance.

Based in part upon that interpretive division in the statute, the majority concludes generally that expert testimony under the statute is limited to concepts that fall within the purview of a licensed physician's or psychologist's expertise, and specifically that the question about whether the injury at issue would cause a similar reaction to a similarly situated worker is outside of that rubric. I disagree both with the statutory interpretation, and also with the practical application. Like the court of appeals, I see no reason to assume that any physician or psychologist will be unable, upon a reasonable investigation, to testify as to whether the injury at issue consists of a psychologically traumatic event that is outside of a worker's usual experience or whether that event would cause distress to other similarly situated workers, or even whether the injury arose out of or in the course of employment. Indeed, particularly the question of whether the event would cause distress to another worker under similar circumstances seems to me to be outside the knowledge or common experience of the ordinary lay witness and, therefore, seems to demand an expert opinion. *See Zick v. Krob,* 872 P.2d 1290, 1294 (Colo.App.1993). I cannot conceive how a claimant would prove that an injury consists of a psychologically traumatic event and also that it would cause distress in other similarly situated workers without the help of expert testimony.

The entire statute contains an intermixture of factual conclusions and professional opinions. If the legislature had intended for the statute's terms to carry different evidentiary requirements, it could plainly and easily have expressed this intention.

On the other hand, I also appreciate how it might be difficult for the claimant to meet her burden of proof on some of these matters without resort to non-expert evidence. Yet, this is why the legislature took care to explain that claimants were required only to *support* the claim of mental impairment with expert testimony—not prove it exclusively by that means.

### III. Conclusion

I agree with the court of appeals' conclusion that the plain language of section 8–41–

301(2)(a) requires that a claimant present expert medical or psychological testimony to support all of the elements of the statutorily defined term "mental impairment" before she can recover for her "mental-mental" injury. Thus, I would affirm the court of appeals' decisions in these consolidated cases and accordingly dissent.

I am authorized to state that JUSTICE COATS joins in this dissent.