Charlene WOLFORD, n/k/a Charlene Pribble, Petitioner,

v.

PINNACOL ASSURANCE, Respondent.

No. 03SC472.

Supreme Court of Colorado,
En Banc.

Feb. 28, 2005.

As Modified on Denial of Rehearing
March 21, 2005.

See also 968 P.2d 174.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, for Petitioner.

Vaughan & DeMuro, David R. Demuro, Pinnacol Assurance, Michael J. Steiner, Denver, for Respondent.

MARTINEZ, Justice.

Petitioner, Charlene Wolford, appeals from a court of appeals decision affirming the district court's entry of summary judgment in favor of respondent, Pinnacol Assurance (Pinnacol). *See Wolford v. Pinnacol Assurance*, 81 P.3d 1079 (Colo.App.2003). This case was initiated by Wolford against Pinnacol in the civil division of the Denver District Court (the district court) as a separate attempt from her workers' compensation case to enforce a 1995 administrative law judge (ALJ) order awarding her $81,251.63 in permanent partial disability (PPD) workers' compensation benefits. The district court found, and the court of appeals agreed, that as a matter of law Wolford forfeited her right to recover PPD benefits because she was convicted under section 8–43–402, C.R.S. (2004), of making false statements to obtain temporary total disability (TTD) benefits. We hold that to give effect to all provisions in the Workers' Compensation Act (the Act) and preserve the intent of the General Assembly, a conviction under section 8–43–402 only requires the forfeiture of the compensation that was obtained as a result of false statements. Accordingly, we reverse the decision of the court of appeals and order the case remanded to the district court for proceedings consistent with this opinion.

## I. Facts and Procedure

In November 1992, Wolford was working as a counselor for Support, Inc. (Support) when she was sexually assaulted by an emotionally disturbed patient. The attacker brutally grabbed her, threw her against the wall, bit her ear, and tried to rip off her clothes. As a result of the attack, Wolford suffered from post-traumatic stress disorder that included symptoms of depression, impaired concentration, insomnia, recurring nightmares, hyperphagia, and extreme anxiety. Wolford also suffered physical injuries to her neck and shoulders.

Although Wolford attempted to return to work, she was unable to continue working as a counselor for Support. Wolford sought workers' compensation benefits from Support and its workers' compensation insurer, Colorado Compensation Insurance Authority, now doing business as Pinnacol.[1] Support and Pinnacol conceded liability for the workers' compensation claim and started paying Wolford monthly TTD benefits.

In May 1993, while receiving her TTD benefits, Wolford began working as a secretary for a law firm. She continued this employment until November 1994, just before her physician determined that she had reached maximum medical improvement (MMI).

Having reached MMI, Wolford then sought PPD benefits and future psychiatric medical benefits from Pinnacol. Pinnacol requested, and Wolford received, a division-sponsored independent medical examination (DIME). After a hearing on the extent of Wolford's permanent medical impairment, on

1. Pinnacol was created by the General Assembly in 2002 as the successor to Colorado Compensation Insurance Authority. *See An Act Concerning the Colorado Compensation Authority*, ch. 341, sec. 1, 2002 Colo. Sess. Laws 1865 (codified as amended at §§ 8–45–101 to –124, C.R.S. (2004)). Pinnacol is a "political subdivision of the state" that operates as a "domestic mutual insurance company" providing, among other things, workers' compensation insurance to Colorado employers. *Id.*

July 26, 1995 an ALJ ordered Pinnacol to pay Wolford PPD benefits totaling $81,251.63 as well as future medical benefits.

Pinnacol appealed the order to the Industrial Claims Appeals Office (ICAO), which affirmed on January 17, 1996. Pinnacol appealed and in an unpublished opinion the court of appeals affirmed the order.

Concurrent to Pinnacol's appeal of the workers' compensation order for PPD and medical benefits, Wolford was investigated and charged with three counts of willfully making false statements to obtain workers' compensation benefits under section 8–43–402, 3 C.R.S. (1995 Supp.), and one count of theft pursuant to section 18–4–401(2)(a), 8B C.R.S. (1995 Supp.). These charges were based on allegations that Wolford filed sworn statements that she had not been working, a requirement of receiving her TTD benefits, when in fact she was working as a secretary between May 1993 and November 1994.

In June 1996, Wolford pleaded guilty in the criminal division of the Denver District Court (the criminal court) to one count of willfully making false statements to obtain workers' compensation benefits under section 8–43–402 and on August 19, 1996, was sentenced to six years probation and ordered to pay restitution. The court probation department recommended that Wolford's restitution be set based upon the TTD benefits Wolford received after returning to work on May 3, 1993, and continuing through November 1994 when she stopped working. During that time, Wolford received forty-two payments totaling $16,693.63 in TTD compensation. Although at the time of her sentencing Wolford had also received several PPD compensation payments, neither the probation department nor the district attorney sought restitution for those payments. As a result, the criminal court only ordered restitution of the TTD compensation Wolford received after she started working.[2]

Although the court of appeals had affirmed the award for PPD and future medical benefits in July 1996, Pinnacol continued to dispute the award because of Wolford's conviction under section 8–43–402. In September 1996, Pinnacol filed a Final Admission of Liability with the Division of Workers' Compensation stating: "Pursuant to C.R.S. 8–43–402, as amended, claimant forfeits all right to compensation upon conviction.... Benefits terminated as of [August 19, 1996]." Pinnacol argued that under section 8–43–402 a conviction for willfully making false statements to obtain any workers' compensation benefit resulted in the forfeiture of all benefits associated with a claim regardless of whether the false statements were related to the benefits.

Wolford requested a hearing before an ALJ on the limited issue of whether or not her conviction under section 8–43–402 resulted in the forfeiture of her future medical benefits. The hearing did not address the forfeiture of her PPD benefits. The ALJ found that although section 8–43–402 stated that a claimant "shall forfeit all right to compensation under [the Act] upon conviction," future medical benefits were not "compensation" and Wolford was still entitled to those benefits. Pinnacol appealed the ruling and the ICAO and the court of appeals affirmed. *See Support, Inc. v. Indus. Claim Appeals Office,* 968 P.2d 174, 176 (Colo.App. 1998).

Following the court of appeals' ruling, Wolford demanded that PPD benefits also be paid because, like the future medical benefits, the PPD benefits were not forfeited pursuant to her conviction under section 8–43–402. Pinnacol refused to pay PPD benefits[3] and, in April 2000, Wolford requested another hearing with an ALJ to decide the issue. Before the hearing could be held, however, Wolford filed this separate action in the district court against Pinnacol seeking enforcement of the original 1995 ALJ order for PPD benefits.

In the district court, Wolford asserted that the forfeiture provision of section 8–43–402 is limited to only those benefits obtained through her false statements and does not allow for the forfeiture of benefits to which Wolford is otherwise entitled. Any other interpretation, according to Wolford, would

---

2. As part of the restitution, the court also included the costs incurred by the State to prosecute Wolford. Total restitution was set at $18,527.62.

3. It appears from the record that Pinnacol paid Wolford PPD benefits from December 1994 through September 1995.

result in a windfall for Pinnacol. In addition, Wolford asserted that the imposition of a forfeiture of her PPD benefits is a criminal penalty, the application of which through an additional proceeding separate from her criminal sentence violated protections against Double Jeopardy and Excessive Fines embodied in the United States and Colorado constitutions. The district court rejected all of these claims and found the plain meaning of "all right to compensation" under the Workers' Compensation Act to include compensation unrelated to the false statements. Accordingly, the district court found that Wolford forfeited her PPD benefits as a matter of law when she was convicted under section 8–43–402 and entered summary judgment against her.

Wolford appealed and the court of appeals affirmed. As an issue of first impression, the court found that a conviction under section 8–43–402 resulted in the forfeiture of all compensation under the Act and consequently Wolford was no longer entitled to PPD benefits.

We granted certiorari to determine whether the forfeiture provision of section 8–43–402 applies to all workers' compensation benefits or only those obtained by making a false statement or representation. We also granted certiorari to determine if the imposition of the forfeiture provision violates the Excessive Fine and Double Jeopardy Clauses of the United States and Colorado constitutions.

## II. Analysis

Our initial task is to determine the meaning and extent of the forfeiture provision of section 8–43–402. Our analysis of section 8–43–402 is broken down into two parts. First we review the Act as a whole and determine that to give meaning and effect to all provisions of the Act, section 8–43–402 cannot be interpreted so broadly as to result in a complete forfeiture of all compensation, including the compensation unrelated to the false statements. To do so would undermine the General Assembly's understanding of how the workers' compensation system functions and render at least two other provisions of the Act meaningless. Second, we construe section 8–43–402 to require a nexus between the false statements and the compensation forfeited. In doing so, we preserve the remedial intent of the Act and the deterrent effect of the penalties set forth in section 8–43–402. In addition, the nexus requirement avoids rendering other provisions meaningless and provides the most rational means to read all provisions in the Act harmoniously.

We next determine that Wolford's conviction under 8–43–402 required the forfeiture of the TTD benefits she received while working fulltime as a secretary because there exists a nexus between that compensation and her false statements. We conclude that because the district court did not apply the nexus analysis between Wolford's false statements and the compensation forfeited, the court incorrectly found as a matter of law that Wolford forfeited her PPD benefits and erred in entering summary judgment against her.

Because the appeals court erred in finding that Wolford forfeited her PPD benefits, we conclude that it is unnecessary to address Wolford's additional arguments that the forfeiture of her PPD benefits violated the Double Jeopardy and Excessive Fines Clauses.

### A. Standard of Review

 This Court reviews a trial court's order granting summary judgment de novo. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo.2004). We also review the court of appeals' interpretation of section 8–43–402 and the Workers' Compensation Act de novo. *Anderson v. Longmont Toyota, Inc.*, 102 P.3d 323, 331 (Colo.2004).

### B. The Scope of Forfeiture Under Section 8–43–402

Section 8–43–402 was enacted in 1915 as part of Colorado's workmen's compensation statutes and remains largely unchanged from its original form.[4] Moreover, the forfeiture

---

4. The 1915 Workmen's Compensation Act stated: If, for the purpose of obtaining any order, benefit, award, or compensation or payment under the provisions of this act, either for himself or for any other person, any one willfully makes a false statement or representation, he shall be guilty of perjury and punished accordingly, and he shall forfeit all right to compensation under this act upon conviction of such offense.
Ch. 179, sec. 89, 1915 Colo. Sess. Laws 515, 561.

language at issue here is the same as that used in the 1915 Act and has not been interpreted by this Court since its original enactment.

The provision defines a class-five felony offense for willfully making a materially false statement to obtain workers' compensation benefits. § 8–43–402. If convicted, a claimant faces possible imprisonment pursuant to section 18–1.3–401, C.R.S. (2004) and "shall forfeit all right to compensation" under the Act.[5] *Id.*

■ Wolford and Pinnacol assert different interpretations of section 8–43–402. Wolford acknowledges that a conviction under section 8–43–402 results in the forfeiture of workers' compensation benefits, however, she insists the forfeiture is limited to only those benefits that were obtained as a result of the false statements. Pinnacol urges a broader reading of the provision, claiming that a conviction under section 8–43–402 results in the forfeiture of "all" benefits associated with any single workers' compensation claim, including the forfeiture of both TTD and PPD compensation stemming from the same workers' compensation claim where Wolford was convicted of making false statements to obtain TTD benefits. Although both parties insist on some limitation on the broad forfeiture language used in section 8–43–402—"all right to compensation under said articles"—neither party convincingly identifies any language in the provision for which a limitation could attach. As such, a possible third, broader, interpretation exists which would result in the forfeiture of all compensation under the Act, both past and future. Such an interpretation would, in effect, result in a "lifetime suspension" from receiving workers' compensation upon a conviction under section 8–43–402.

■ As we examine the scope of the forfeiture provision in section 8–43–402, we are mindful that this section was not adopted in isolation but enacted as one piece of the Act. In interpreting a comprehensive legislative scheme, we must construe the statutory provisions to further the intent of the General Assembly. *A.B. Hirschfeld Press, Inc. v. City and County of Denver,* 806 P.2d 917, 920 (Colo.1991). A comprehensive regulatory scheme such as the Act must also be construed as a whole to give effect and meaning to all its parts. *Gonzales v. Advanced Component Sys.,* 949 P.2d 569, 574 (Colo. 1997). In doing so, we note that the Act is intended to be "remedial and beneficent in purpose, and should be liberally construed" to accomplish these goals. *Davison v. Indus. Claim Appeals Office of State,* 84 P.3d 1023, 1029 (Colo.2004) (internal citations omitted).

■ If we "can give effect to the commonly accepted and understood meaning of the language used in a statute, [we] should construe the statute as written." *Gonzales,* 949 P.2d at 574. However, where discrete provisions of the same statutory scheme may be harmonized, "but would be antagonistic under a different construction, the court should adopt the construction that results in harmony." *Id.* Thus, we must interpret a statute to give effect to all its parts and avoid interpretations that render statutory provisions redundant or superfluous. *Colo. Comp. Ins. Auth. v. Jorgensen,* 992 P.2d 1156, 1163 (Colo.2000).

When read in isolation, the phrase "shall forfeit all right to compensation" in section 8–43–402 appears to encompass all compensation, past and future. However, additions to the Act since it was repealed and re-enacted in 1990 not only convey the General Assembly's contrary intent and understanding of section 8–43–402, but render such a broad interpretation of the forfeiture unworkable. Specifically, when looking to the Act as a whole to determine the extent of the forfeiture provision in section 8–43–402, there exist two additional provisions of the Act that address false statements or benefits obtained through fraud and must be taken into consideration. First, section 8–43–304(2), C.R.S. (2004), allows an insurer or self-insured em-

---

**5.** Section 8–43–402 states:

If, for the purpose of obtaining any order, benefit, award, compensation, or payment under the provisions of articles 40 to 47 of this title, either for self-gain or for the benefit of any other person, anyone willfully makes a false statement or representation material to the claim, such person commits a class 5 felony and shall be punished as provided in section 18–1.3–401, C.R.S., and shall forfeit all right to compensation under said articles upon conviction of such offense.

ployer to take an offset or credit against compensation owed to a claimant for previously paid benefits that were obtained through fraud. Second, section 8–42–112(1)(d), C.R.S. (2004), which establishes a fifty-percent penalty in workers' compensation for misleading statements made by a claimant to her employer about her physical ability to perform the job. The fifty-percent penalty is "in addition to any other penalty that may be imposed under section 8–43–402." § 8–42–112(1)(d). Because these provisions contemplate that a workers' compensation claimant will still be entitled to some compensation following the application of the forfeiture provision, we find that section 8–43–402 cannot be read as a complete forfeiture of all compensation under the Act.

Section 8–43–304(2) was enacted in 1991. Ch. 219, sec. 35, § 8–43–304(2), 1991 Colo. Sess. Laws 1291, 1323–24. The provision directly contemplates that a claimant will still be entitled to some benefits after a criminal conviction is entered against her under section 8–43–402. Section 8–43–304(2) allows an insurer to offset benefits due a claimant for previously paid benefits that were obtained through fraud. Section 8–43–304(2) states:

> An insurer or self-insured employer may take a credit or offset of previously paid workers' compensation benefits or payments against any further workers' compensation benefits or payments due a worker when the worker admits to having obtained the previously paid benefits or payments through fraud, or a civil judgment or criminal conviction is entered against the worker for having obtained the previously paid benefits through fraud.

The insurer is entitled to such an offset or credit under three circumstances: (1) where the claimant "admits" to obtaining benefits through fraud, (2) where a civil judgment has been entered against the claimant for obtaining the benefits through fraud, or (3) where the claimant is convicted of criminally obtaining benefits through fraud. § 8–43–403(2).

The first and third scenarios are relevant here because the facts giving rise to either of these scenarios may also give rise to a criminal conviction under section 8–43–402. That is, a significant overlap exists between section 8–43–402 and section 8–43–304(2) because both are implicated where a claimant obtains workers' compensation benefits through fraud.

For example, this overlap occurs where a claimant enters into a plea agreement ("admitting" to the crime) or is convicted at trial under section 8–43–402 and the underlying facts of the conviction show that the false statements made by the claimant constitute fraud.[6] Where the overlap occurs and the compensation benefits were obtained by fraud, the insurer or self-insured employer may then claim an offset for those benefits already paid as a result of the fraud against those benefits still due the claimant.

This overlap is significant because it affects how the General Assembly understood these separate provisions to relate. If we were to find that section 8–43–402 requires a claimant to forfeit all compensation under the Act for a conviction of making false statements to obtain workers' compensation benefits, there would be no benefits remaining against which to apply the offset provision of section 8–43–304(2).

When the General Assembly chose to legislate and adopt section 8–43–304(2), it is presumed to be aware of its other enactments. *See Anderson,* 102 P.3d at 330. Here, we presume the General Assembly was aware of section 8–43–402 and the effect of the forfeiture provision on compensation benefits and did not understand section 8–43–402 to render a complete forfeiture of all compensation under the Act. Otherwise, if we were to apply section 8–43–402 to forfeit all workers' compensation benefits, including those not obtained through fraud or false statements, we would render the criminal convic-

---

6. Section 8–43–304(2) and section 8–43–402 both appear to address the same or similar factual basis. Neither section 8–43–304(2) or Colorado's criminal statutes define what is meant by "fraud." However "fraud" is generally defined as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." *Black's Law* *Dictionary* 685 (8th ed.2004). As such, "fraud" as used in 8–43–304(2) is distinct from section 8–43–402 only on the limited difference between "knowing" and "willfully." Given the similarity between the two provisions, it is clear that there is strong potential for the two statutes to apply to the same factual circumstances.

tion portion of section 8–43–304(2) meaningless and contravene the intent of the General Assembly.

Section 8–43–304(2) does not stand alone as the only evidence of the General Assembly's understanding that section 8–43–402 requires less than a complete forfeiture of all a claimant's compensation under the Act. Section 8–42–112(1)(d), enacted in 1999, requires workers' compensation provided under the Act be reduced by fifty percent if a claimant willfully misled his employer concerning his physical ability to perform the job and was subsequently injured as a result.[7] Ch. 139, sec. 1, § 8–42–112(1)(d), 1999 Colo. Sess. Laws 406, 406. This fifty-percent penalty is to apply "in addition to any other penalty that may be imposed under section 8–43–402." Again, by the express language used, section 8–42–112(1)(d) overlaps with section 8–43–402. Given this overlap, it is evident that the General Assembly contemplates some amount of compensation remaining due to a claimant after the application of the forfeiture provision in section 8–43–402.

In the situation where the claimant's misleading or false statements about her physical ability to perform the job also resulted in a conviction under 8–43–402, section 8–42–112(1)(d) assumes that the fifty-percent penalty would apply in addition to the forfeiture provision of 8–43–402. If we were to interpret section 8–43–402 to render a complete forfeiture as urged by Pinnacol, there would be no possibility of any compensation being due a claimant and our interpretation would therefore contravene the General Assembly's comprehension of the statute and render the reference to section 8–43–402 in section 8–42–112(1)(d) superfluous.

Given the significant overlap with other sections of the Act, it is apparent that the broad interpretation of section 8–43–402 as urged by Pinnacol and adopted by the court of appeals would be antagonistic to these provisions. More specifically, a complete forfeiture of all compensation under the Act

would conflict with the application of sections 8–43–304(2) and 8–42–112(1)(d). As a result, we cannot adopt such an interpretation.

Having determined that section 8–43–402 cannot be applied so broadly as to render a forfeiture of all compensation, we must determine how to apply the provision. We look to a narrower construction of section 8–43–402 that best reflects the remedial purpose of the Act and incorporates the intent of the General Assembly. We must also construe the provision so that it is in harmony with the rest of the Act. *See Gonzales,* 949 P.2d at 574. We conclude that the forfeiture provision is best read as only a forfeiture of compensation obtained as a result of the false statements. That is, there must be a nexus between the false statements and the compensation forfeited.

First, we are persuaded that a narrow construction of section 8–43–402 serves the "remedial and beneficent" purpose underlying Colorado's workers' compensation system. *See Davison,* 84 P.3d at 1029. Requiring a nexus between the false statements and the compensation forfeited gives a claimant a remedy for those injuries suffered on the job and permits compensation where the claimant is entitled to such benefits. The nexus requirement avoids the loss of benefits for which an insurer or self-insured employer concedes liability simply because of false statements unrelated to a claimant's right to redress for her injuries. The General Assembly specifically instructs that the Act is to "be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers ... recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike." § 8–40–102(1), C.R.S. (2004). Because the Act limits the remedy for work-related injuries to the workers' compensation system and prohibits an in-

---

7. Section 8–42–112(1)(d) states that the "compensation provided" under the Act shall be reduced by fifty percent:

Where the employee willfully misleads an employer concerning the employee's physical ability to perform the job, and the employee is subsequently injured on the job as a result of

the physical ability about which the employee willfully misled the employer. Notwithstanding any other provisions of articles 40 to 47 of this title, the provisions of this paragraph (d) shall apply in addition to any other penalty that may be imposed under section 8–43–402.

jured employee from seeking compensation through traditional court proceedings, a complete forfeiture of all compensation, including compensation unrelated to the false statements, would result in a severe penalty permanently depriving the injured claimant a remedy. Such a measure would defeat the purpose of the system and contradict what is intended to be a remedial process.

At the same time, our narrow construction also preserves the deterrent effect of section 8–43–402. The nexus requirement still presents a claimant with the prospect of forfeiting the right to compensation if she makes false statements to acquire payments. Consequently, a claimant is dissuaded from exaggerating claims or attempting to seek compensation to which she is not otherwise entitled. In addition, our narrow construction of the forfeiture provision also encourages claimants to be truthful during the claims process, fostering a compensation system that is both "quick and efficient" in delivery of disability compensation.

Last, by requiring a nexus between the false statements and the compensation forfeited, we can give effect to the other provisions in the Act. As noted above, both section 8–43–304(2) and section 8–42–112(1)(d) contemplate that some compensation will still be due a claimant after a conviction under section 8–43–402. As such, any construction of the forfeiture provision must allow the possibility that some compensation will remain due a claimant after a conviction.

If the forfeiture is limited to only that compensation obtained as a result of the false statements, there remains a possibility that a claimant would still be entitled to the compensation that was not acquired with false statements. In a case where, as here, a claimant makes false statements that she is not working in order to receive TTD compensation, she would forfeit all right to TTD compensation. Assuming no false statements were made to obtain PPD compensation, the claimant would still be entitled to that compensation. In contrast, where a claimant makes false statements to inflate the severity of her work-related injuries, to the extent those false statements resulted in increased temporary disability and permanent disability payments, the claimant would forfeit all right to both temporary and per-

manent disability compensation. Were we to adopt the court of appeals' construction of section 8–43–402, there would be no possibility that a claimant would still be entitled to any compensation under the Act following a conviction for either of these statements.

Requiring a nexus between the false statements and the compensation forfeited gives effect to both section 8–43–304(2) and section 8–42–112(1)(d). Section 8–43–304(2) remains effective because an insurer can take an offset against any remaining compensation after a conviction under section 8–43–402. Similarly, the remaining compensation would be subject to the fifty-percent penalty as contemplated under section 8–42–112(1)(d). In requiring a nexus, we avoid rendering these provisions hollow and give effect to the Act as a whole.

For these reasons, we hold that a claimant forfeits only the disability compensation obtained as a result of the false statements for which she was convicted under section 8–43–402.

## C. Application

As outlined above, a workers' compensation claimant forfeits only the compensation she obtains as a result of the false statements for which she was convicted under section 8–43–402. Accordingly, it is clear that Wolford's conviction under 8–43–402 required the forfeiture of the TTD benefits she received while working fulltime as a secretary because there exists a nexus between that compensation and her false statements. However, because the district court determined as a matter of law that Wolford also forfeited her PPD compensation without employing the nexus analysis, we find the district court erred in granting Pinnacol summary judgment against Wolford.

Although the criminal court specifically avoided declaring the imposition of Wolford's sentence a forfeiture under section 8–43–402, the restitution portion of the sentence demonstrates the nexus that must exist between the false statements and the compensation forfeited. As part of her sentence, Wolford was required to pay restitution under the sentencing provisions of section 18–1.3–603, C.R.S. (2004) (formerly codified at 16–18.5–

103, 8A C.R.S. (1995 Supp.)). Wolford's restitution was based upon the total amount of TTD benefits that Wolford received after she started working. This order reaches the same result as that permitted under section 8–43–402 as we interpret it today—the forfeiture of that compensation obtained as a result of Wolford's false statements.

As a condition of receiving TTD benefits, Wolford was not permitted to work. *See* § 8–42–105(3)(b), C.R.S. (2004) ("Temporary total disability benefits shall continue until the first occurrence of any one of the following: ... The employee returns to regular or modified employment."). Thus, when Wolford first stated that she was not working in May 1993, she was no longer entitled to TTD benefits. When she filed false statements with Pinnacol that she was not working, she began receiving workers' compensation benefits as a result of her false statements. Continuing from May 1993 through November 1994, the TTD compensation Wolford received was obtained as a result of her false statements. As such, consistent with this opinion, Wolford forfeited this TTD compensation upon her conviction under section 8–43–402 because of the nexus between the false statements for which she was convicted and the compensation she received. Thus, the criminal court's restitution order of that same TTD compensation effectively made the proper forfeiture of Wolford's TTD benefits.

The district court in this case, however, without looking to the nexus between the false statements and the compensation forfeited, determined as a matter of law that Wolford also forfeited her PPD compensation. Accordingly, the district court erred in granting Pinnacol summary judgment against Wolford.

### D. Other Issues Raised by Wolford

Because we have determined that the district court erred and Wolford is not required to forfeit her PPD compensation as a matter of law, we need not consider her additional contentions that such a forfeiture violated constitutional prohibitions against double jeopardy and excessive fines.

### III. Conclusion

To give effect to all provisions in the Workers' Compensation Act and preserve the intent of the General Assembly, a conviction under section 8–43–402 only requires the forfeiture of the compensation that was obtained as a result of false statements. Accordingly, we reverse the decision of the court of appeals and order the case remanded to the district court for proceedings consistent with this opinion.