Anni E. DZIEWIOR, Petitioner,

v.

MICHIGAN GENERAL CORPORATION, Kohler-McLister; Industrial Commission of Colorado; Charles J. McGrath, Director, Division of Labor; and Transportation Insurance Company, Respondents.

No. 83CA0200.

Colorado Court of Appeals, Div. III.

Oct. 20, 1983.

Richard T. Goold, Denver, for petitioner.

James R. Clifton, Denver, for respondents Michigan General Corp., Kohler-McLister, and Transp. Ins. Co.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sp. Asst. Atty. Gen., William Levis, Asst. Atty. Gen., Denver, for respondents Industrial Com'n and Charles J. McGrath, Director, Div. of Labor.

BABCOCK, Judge.

In this workmen's compensation case, claimant, Anni E. Dziewior, seeks review of a final order of the Industrial Commission which granted her permanent partial disability benefits, denied her claims for vocational rehabilitation and for benefits for physical disfigurement, and "reopened" her claim in part to permit further medical treatment and temporary disability benefits. We affirm in part, set aside in part, and remand for additional proceedings.

Claimant suffered a compensable injury in January 1976 to the index and middle fingers of her right hand while working as a printer. Four surgical procedures were performed between 1976 and 1979, when hearings on the suspension of temporary disability benefits were held. Claimant had worked full time or part time on an intermittent basis until June 1978.

The hearing officer granted the request of respondents Michigan General Corporation (employer) and Transportation Insurance Co. (insurer) for suspension of temporary disability benefits as of July 11, 1979, concluding that the physical and organic impairment of claimant's right hand was "quite minimal" and that she had "the physical ability to perform her previous work as a printer or as a janitor." A report and the testimony of a hand surgeon who was treating claimant at the time of the 1979 hearings support this finding. This doctor recommended psychiatric evaluation and treatment. This psychiatric treatment was provided to claimant but was terminated by her.

Hearings on permanent disability were held before another hearing officer in September 1980 and June and August 1981. At the 1980 hearing it was established that the surgeon who had been primarily respon-

sible for the treatment of claimant's injuries, including all of her surgeries, had performed a further surgical procedure on one of her injured fingers after the order suspending temporary disability benefits and had not released claimant to return to work. Claimant, who is right handed, testified that she had continuing pain in her entire right arm and the right side of her neck and was unable to use her right arm for work she had done as a printer. She had also had a modified radical mastectomy in August 1978 on the left side which impeded the use of her left hand.

In March 1981, claimant was examined by a doctor of her choice who opined that she had a 10 percent working unit disability attributable to the injuries to her fingers. At the 1981 hearings it was established that in May 1981 claimant had been evaluated and treated briefly as an inpatient at the Pain Control Center of Boulder Memorial Hospital upon referral of her surgeon in consultation with, and with payment covered by, respondents. Her treatment was terminated when she did not return to the Center.

Claimant testified that she did not return because of side effects she felt she was experiencing from an antidepressant and analgesic medication prescribed at the Center. She also expressed reservations about undergoing other treatment which had been offered to her at the Center, specifically a sympathetic nerve block.

The director of the Center, a neurologist, testified that he diagnosed claimant's condition as bilateral sympathetic dystrophy, worse on the right side and related to her traumatic injury. The condition was "beginning" on the left side where the doctor related it to the mastectomy and to tenosynovitis in the left elbow which he attributed both to the mastectomy and to claimant's dependence on her left arm since the injury. In his opinion claimant was "totally incapacitated" by this impairment which causes a great deal of pain. The doctor diagnosed in addition a severe reactive depression. He further opined that with a sympathetic nerve block, possibly followed by a sympathectomy, and drug therapy, claimant's pain and depression "could be substantially reduced, possibly" and that without these procedures her prognosis was "terrible." He stated also that because of the time that had elapsed since claimant's traumatic injury the chances of success of the nerve block were only about 25 percent but that it was important to try it. This treatment had also been urged upon claimant in 1976 and 1977 by her surgeon, but she had refused the treatment at that time. The doctor who was treating her at the time of suspension of temporary benefits opposed it.

At the conclusion of the August hearing claimant requested and, with respondents' concurrence, was granted 10 days to determine whether or not she would cooperate with the treatment proposed for her at the Center. Within the 10-day period she advised the hearing officer that she would cooperate. Twenty days later, because claimant had not returned to the Center, respondents advised the hearing officer of their position that claimant "continues to refuse reasonable medical services." Claimant's attorney responded that he had advised claimant's action pending notification from respondents that they continued to offer the care and would reinstate temporary disability benefits. No further action was taken by the parties, and the hearing officer entered her order.

The hearing officer found that claimant suffered from chronic pain and weakness and neuropathy in the right hand and wrist as the result of her traumatic injury and had serious psychological problems. She determined that claimant reached maximum medical improvement in May 1981, when claimant did not return for further care at the Pain Control Center. The hearing officer found also that because of claimant's resistance to psychiatric or other mental health intervention, her reluctance to undergo a sympathetic block, and persistence in a practice of soaking her hand contrary to her physician's advice, further medical treatment was not likely to be successful and that it was appropriate, there-

fore, to assess her permanent disability. She awarded claimant a 10 percent working unit disability which she considered "a fair measure of her permanent disability, with or without pain clinic treatment." No reference was made in this order to temporary disability benefits after July 1979, nor, other than that it was stated to be an issue at the 1981 hearings, to vocational rehabilitation.

In connection with claimant's petition for review and the response thereto, there was again correspondence between the parties in which claimant stated that she had accepted an offer of further treatment at the Pain Control Center. Respondents countered that such offer no longer existed.

The Industrial Commission affirmed the hearing officer's award of permanent disability, her "implicit" denial of vocational rehabilitation, her failure to order temporary disability benefits between July 1979 and May 1981, and her denial of medical benefits after May 1981 and to the date of the Commission's order in October 1981. In so doing, the Commission affirmed the hearing officer's findings insofar as they related to claimant's refusal to cooperate in the treatment offered to her for pain control and relief of her depression and thus her determination that claimant reached maximum medical improvement in May 1981. The Commission found also that claimant had not established that any temporary total disability after July 1979, any alleged permanent total disability, nor any psychological or mental condition was causally related to her traumatic injury. It rejected a claim for disfigurement, which was asserted for the first time in claimant's petition for review, on the ground that it had not been timely presented.

The Commission "reopened" the claim for purposes of affording claimant an opportunity to undergo treatment at the Pain Control Center, finding that claimant "appears now to be willing to accept pain control treatment." It ordered respondents again to offer and provide such treatment as was previously offered and to pay temporary disability benefits contingent upon claimant's timely acceptance of the offer. The Commission found that the treatment was reasonably necessary and had a reasonable prospect of success in alleviating claimant's pain syndrome. The Commission later denied claimant's motion to extend the time for review of the remainder of its order until after completion of the treatment.

In her petition to this court claimant's primary contention is that the Commission's finding that she reached maximum medical improvement in May 1981 and its orders with respect to vocational rehabilitation and permanent disability are premature in light of its order that claimant is entitled to further medical treatment. Therefore, she claims that they should be set aside and reconsidered after the conclusion of claimant's medical treatment. We agree.

Initially, we note that all parties sought review of that portion of the Commission's order which directed that claimant be provided further medical and temporary disability benefits. However, that challenge has been abandoned; respondents offered the treatment, and claimant accepted it. Since, therefore, the evidentiary basis and statutory authority for the Commission's order for further treatment are not disputed, we do not now consider the propriety of that order. *Cf. Industrial Commission v. Employers' Liability Assurance Corp.,* 78 Colo. 267, 241 P. 729 (1925). However, while the Commission denominated its order a partial "reopening," we conclude that the order constituted a determination that the suspension of claimant's benefits pursuant to § 8–51–110(3), C.R.S.1973 (1982 Cum. Supp.) was terminated and benefits would be reinstated and that it did not constitute a reopening pursuant to § 8–53–119, C.R.S. 1973 (1982 Cum.Supp.).

Section 8–51–110(3) provides in pertinent part:

"If any employee persists in any unsanitary or injurious practice which tends to imperil or retard his recovery or refuses to submit to such medical or surgical treatment or vocational rehabilitation as is reasonably essential to promote his recovery and rehabilitation, the director, in his discretion, may reduce or suspend the compensation of any such injured employee."

■ Here, the hearing officer's finding that claimant had reached maximum medical improvement in May 1981 and her conclusion that it was therefore appropriate to assess permanent disability were premised on the findings that claimant refused treatment which was "reasonably calculated to improve her chronic pain syndrome." That order was appropriate when claimant was unwilling to submit to the proffered treatment and its premise is not now challenged. However, when the Commission determined that claimant was subsequently willing to undergo treatment and that such treatment as previously offered and refused had a reasonable prospect of success in alleviating her pain, we can only conclude that there was no longer a basis for a finding that claimant had reached maximum medical improvement in May 1981.

■ The above-quoted statute provides for a suspension of compensation. To "suspend," in the context in which the term is used in this statute, has been defined as follows: "[t]o interrupt; to cause to cease for a time; . . . to discontinue temporarily, but with an expectation or purpose of resumption." *Black's Law Dictionary* 1297 (5th ed. 1979). Thus, the statute permits a resumption of benefits after a period of suspension when, as here, the disqualifying condition has been removed. *Cf. Padillo v. F.H. Linneman Construction Co.,* 29 Colo. App. 137, 479 P.2d 990 (1971).

■ We also agree with the claimant that the award of permanent disability was premature. While § 8–51–108(1)(a), C.R.S. 1973, does not specify the time at which permanent partial disability is to be determined and leaves this issue to the discretion of the director of the Division of Labor, *Wilson v. Sinclaire,* 109 Colo. 592, 128 P.2d 996 (1942), permanent disability generally cannot be determined until the authorized physicians treating a claimant for work-related injuries advise that they can do nothing further for the claimant. *See London Guarantee & Accident Co. v. Industrial Commission,* 72 Colo. 177, 210 P. 70 (1922); *see also Savage Welding Supplies v. Industrial Commission,* 120 Ariz. 592, 587 P.2d

778 (1978); *see generally 2 A. Larson, Workmen's Compensation Law* § 57.12 (1982).

■ Here, it is not disputed that the neurologist at the Pain Control Center was an authorized physician rendering authorized treatment. Moreover, the hearing officer found, and the Commission's order implicitly recognized, that the condition for which treatment was offered—the chronic pain— was claimant's disability and was causally related to her compensable injury. The Commission's order recognized also that claimant's condition had not yet become stabilized to the point where there was not a reasonable expectation of improvement. *See 2 A. Larson, supra.* Evaluation for permanent disability cannot precede the determination that claimant's condition has stabilized. *See also Hecla Mining Co. v. Industrial Commission,* 119 Ariz. 313, 580 P.2d 774 (1978).

■ The issue of claimant's entitlement to vocational rehabilitation must also be reevaluated in light of claimant's further medical treatment for her disability and her subsequent ability "to perform work for which [s]he has previous training or experience." Section 8–49–101(4), C.R.S.1973 (1982 Cum.Supp.). Contrary to respondents' contention, that issue has not been precluded by the initial determination that claimant did not meet the statutory standards for vocational rehabilitation. *See Morrison v. Clayton Coal Co.,* 116 Colo. 501, 181 P.2d 1011 (1947).

■ Insofar as the Commission found that any temporary total disability during the period from July 1979 to May 1981 was not causally related to claimant's compensable injury but was the result only of other intervening factors, that finding is not supported by the record and must be reversed. *See Martinez v. Industrial Commission,* 32 Colo.App. 270, 511 P.2d 921 (1973). Upon remand the hearing officer must make the necessary factual determinations, holding such further hearings as may be deemed necessary, to establish periods of disability during this time which were attributable to claimant's compensable injury and have not been compensated.

■ We agree with the Commission that claimant did not timely raise a claim for disfigurement pursuant to § 8–51–105, C.R.S.1973 (1982 Cum.Supp.) and therefore with its denial of that claim. *See* § 8–53–106(2)(a), C.R.S.1973 (1982 Cum.Supp.).

The order of the Commission is affirmed insofar as it (1) provided for further medical treatment and temporary total disability benefits for claimant; (2) denied her claim for disfigurement; and (3) suspended disability benefits as of May 1981. The order is set aside insofar as it (1) denied temporary disability benefits between July 1979 and May 1981; (2) denied reconsideration of entitlement to vocational rehabilitation benefits; and (3) made an award of permanent disability. That portion of the Commission's order which dismissed without prejudice claimant's motion for imposition of penalties is not a part of this appeal and remains in effect without consideration by this court. The cause is remanded to the Commission for remand to the Director of the Division of Labor for further proceedings not inconsistent with the views expressed in this opinion.

STERNBERG and TURSI, JJ., concur.