William E. WHITE, Petitioner,

v.

STATE COMPENSATION INSURANCE FUND, Major Medical Insurance Fund, Columbine Concrete, Inc. and the Industrial Commission of the State of Colorado, Respondents.

No. 84CA0570.

Colorado Court of Appeals,
Div. III.

Jan. 17, 1985.

Rehearing Denied March 7, 1985.

Certiorari Denied May 28, 1985.

Stephen J. Worrell, Glenwood, for petitioner.

Paul Tochtrop, Denver, for respondents State Compensation Fund and Columbine Concrete, Inc.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Aragon, Asst. Atty. Gen., Denver, for respondent Indus. Com'n and Major Medical Ins. Fund.

STERNBERG, Judge.

The claimant, William E. White, seeks review of a final order of the Industrial Commission dismissing his claim for vocational rehabilitation benefits against the Major Medical Insurance Fund. We set aside the order.

The Claimant suffered a compensable industrial back injury on October 29, 1980. His employer, Columbine Concrete, Inc., and the State Compensation Insurance Fund, respondents, filed an admission of liability for the injury on March 4, 1981. Claimant was surgically treated for his injury on October 1, 1981, and in June 1982, but remained disabled from his former employment.

On April 21, 1983, the claimant and the State Compensation Insurance Fund entered into a "Stipulation for Settlement and Agreement" under which claimant accepted $34,000 in exchange for his release of all claims for future vocational rehabilitation benefits and temporary total or permanent partial disability benefits. The agreement recited that claimant's medical and vocational expenses had exceeded $20,000, that any additional medical or vocational rehabilitation expenses were the responsibility of the Major Medical Insurance Fund, and that the agreement was not intended to compromise any claim against the Major Medical Insurance Fund.

The claimant then applied for and was granted admission to the Major Medical Insurance Fund on June 21, 1983, on the grounds that his medical expenses were in excess of $20,000 and that he had not yet reached maximum medical improvement. However, on June 29, 1983, the deputy director of the Major Medical Insurance Fund served notice that in his view the settlement agreement relieved the Major Medical Insurance Fund of any further liability for vocational rehabilitation benefits.

Following a hearing before the Division of Labor, the hearing officer entered an order denying the claimant further vocational rehabilitation benefits on the basis of the settlement agreement. The Industrial Commission affirmed the order.

On review, claimant contends that the Commission erred in its determination that the settlement agreement precluded further Major Medical Insurance Fund liability. We agree.

The purpose of the Major Medical Insurance Fund is to provide additional financial resources after an employer has paid $20,000 of medical benefits to an injured employee. *In re Claim of Sterling v. Industrial Commission*, 662 P.2d 1096 (Colo.App.1982). A worker's entitlement to benefits under the Major Medical Insurance Fund is determined in accordance with and subject to the provisions of the Workmen's Compensation Act. Section 8–66–107, C.R.S. (1984 Cum.Supp.); *In re Claim of Sterling v. Industrial Commission, supra.* Section 8–49–101(4), C.R.S. (1984 Cum.Supp.) provides that:

"Every employee who has suffered an injury covered by this article shall be entitled to vocational rehabilitation ... when, as a result of the injury or occupational disease, he is unable to perform work for which he has previous training or experience. Such vocational rehabilitation services shall continue for such time as may reasonably be necessary ... for the purpose of restoring the employee to suitable employment."

Thus, the predicates for Major Medical Insurance Fund liability for vocational rehabilitation benefits are, first, that the em-

ployee suffer a compensable injury rendering him incapable of the employment for which he has previous training or experience and, second, that the total benefits expended by the employer for medical and vocational rehabilitation benefits exceed $20,000. It is undisputed that these requirements have been met here.

The respondents argue, and the Commission held, however, that in view of the settlement agreement vocational rehabilitation payments are precluded by § 8–49–101(5), which provides that:

"Any employee found eligible for vocational rehabilitation ... shall not have his degree of permanent partial disability determined until he has completed his vocational rehabilitation program."

The respondents assert that because the settlement agreement resolved the issue of permanent disability, vocational rehabilitation benefits are unavailable. We disagree.

■ The provision that permanent partial disability is to be determined only after vocational rehabilitation is concluded embodies the broader principle that permanent disability cannot be determined until the injured worker has achieved maximum medical and industrial recovery. *See Dziewior v. Michigan General Corp.*, 672 P.2d 1026 (Colo.App.1983); 2 A. Larson, *Law of Workmen's Compensation* § 57.12 (1982). It does not follow from this principle that vocational rehabilitation is available only if a claim for permanent disability remains unresolved. As the instant case illustrates, a claimant may compromise and settle his right to permanent disability benefits while remaining unable to perform the work for which he has previous training or experience. Under such circumstances, the statutory predicates for vocational rehabilitation may continue even though the degree of permanent disability which the claimant has sustained is no longer at issue.

The order is set aside and the cause is remanded for entry of an order awarding the claimant vocational rehabilitation benefits.

TURSI and METZGER, JJ., concur.