**POWDERHORN COAL COMPANY and Old Republic Insurance Company, Petitioners,**

v.

**Bobby E. WEAVER and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

**No. 91CA0614.**

Colorado Court of Appeals, Div. V.

July 16, 1992.

Killian & Killian, P.C., J. Keith Killian, Grand Junction, for petitioners.

Traylor, Arnold, Tompkins & Black, P.C., Peter R. Black, Grand Junction, for respondent Bobby E. Weaver.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., David C. Feola, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Opinion by Chief Judge STERNBERG.

Petitioners, Powderhorn Coal Company (employer) and Old Republic Insurance Company, challenge an order of the Industrial Claim Appeals Panel which affirmed a decision of the Administrative Law Judge (ALJ) to set aside a settlement agreement between petitioners and Bobby E. Weaver (claimant) and to award claimant medical and permanent total disability benefits for industrial injuries. We affirm.

Claimant suffered a series of upper body industrial injuries, two of which occurred in May and October of 1985. The claims resulting from these two injuries are the subject of this appeal.

Petitioners paid claimant temporary disability benefits for both injuries and provided vocational rehabilitation for the October 1985 injury. Thereafter, claimant and petitioners executed a stipulation and release which provided that claimant would receive a lump sum payment of $43,775, and medical benefits for an additional eighteen months and would waive his right to additional money or benefits and his right to reopen the claim except in case of fraud or mutual mistake of material fact. After a March 3, 1987, settlement hearing, at which claimant proceeded *pro se*, the ALJ approved the stipulation and release.

Eighteen months after the settlement was approved, claimant, now through counsel, filed a petition to set aside the settlement and reopen the claim. Before the date of the settlement, and indeed before the two injuries at issue, claimant had been diagnosed as schizophrenic, and medical reports attached to the petition attested to claimant's mental disability. Therefore, claimant alleged that he was mentally incompetent to enter into the settlement. The ALJ agreed and, consequently, set aside the settlement agreement. The ALJ also found that petitioners did not comply with certain procedural rules for filing documents prior to the hearing, including medical reports which detailed claimant's mental problems.

In conjunction with setting aside the settlement, the ALJ found that claimant's pre-existing mental condition was aggravated by his industrial injuries. The ALJ concluded that the combined effect of claimant's physical impairments and the aggravation of his psychiatric disability rendered him permanently and totally disabled. The Panel affirmed the ALJ's award of medical and permanent total disability benefits and concluded that the ALJ had implicitly found that the settlement agreement was set aside on the ground of mutual mistake of material fact as to claimant's competency to enter that agreement.

I.

Petitioners first contend that the Panel erred in setting aside the settlement on the ground of claimant's mental incompetency because incompetency is not one of the statutory reasons for reopening a settlement. We disagree.

The settlement of a workers' compensation claim may be reopened only on grounds of fraud or mutual mistake of fact. Sections 8–43–204 and 8–43–303(1), C.R.S. (1991 Cum.Supp.). However, an ALJ is empowered to determine the competency of a claimant entering into a settlement agreement, § 8–43–207(1)(m), C.R.S. (1991 Cum.Supp.), which in essence represents a determination of a claimant's capac-

ity to contract. When no such capacity exists because of mental incompetency, the contract is voidable by the person lacking capacity to contract. *Davis v. Colorado Kenworth Corp.*, 156 Colo. 98, 396 P.2d 958 (1964).

■ Petitioners' argument that invalidation of a settlement agreement because of a claimant's incompetency is not permitted because such is not statutorily specified ignores the statutory power of the ALJ to determine a claimant's capacity to enter into a settlement agreement. This statute must be read in conjunction with, and not in isolation from, the competing provisions. *Casa Bonita Restaurant v. Industrial Commission*, 624 P.2d 1340 (Colo.App. 1981).

■ In reconciling the reopening statutes with the statute empowering the ALJ to determine competency, we recognize that the predecessor to § 8–43–207(1)(m) was adopted as becoming effective July 1, 1988, and the ALJ has applied it retrospectively to find that claimant was incompetent on March 3, 1987, when he entered into the settlement agreement. Nevertheless, the ALJ properly applied this provision here because it effects a procedural, rather than a substantive, change. *See Neodata Services v. Industrial Claim Appeals Office*, 805 P.2d 1180 (Colo.App. 1991); *Kinninger v. Industrial Claim Appeals Office*, 759 P.2d 766 (Colo.App.1988).

While ideally an ALJ should make the competency determination prior to approving a settlement agreement, we note that petitioners' own conduct here prevented the ALJ from making a more timely competency determination. The ALJ specifically found that petitioners' failure to comply with procedural rules requiring the filing of medical reports two days prior to the hearing resulted in his not having access "to essential information which would have allowed the ALJ to properly consider the *pro se* settlement." Although the Panel did not view this violation as a dispositive factor in the ALJ's determination to set aside the settlement agreement, we do not, in view of the ALJ's explicit finding to the contrary, discount its impact on his decision.

Accordingly, the ALJ could properly find that the settlement was voidable on the ground that claimant was mentally incompetent at the time he entered into the settlement. While we do not adopt the Panel's conclusion that the ALJ implicitly found a mutual mistake, we agree with the Panel's result and therefore affirm.

## II.

■ Petitioners' next contention is that the Panel erred in finding that claimant was permanently totally disabled and ineligible for vocational rehabilitation benefits. Petitioners argue that the award could be granted only after medical proof and after a vocational rehabilitation assessment is made, and since the ALJ did not have current medical and vocational rehabilitation reports, these requirements were not met. We are unpersuaded.

■ Sections 8–49–101(4) and 8–49–101(5), C.R.S. (1986 Repl.Vol. 3B), upon which petitioners rely, establish the circumstances under which a claimant is entitled to vocational rehabilitation and provide that, if a claimant is eligible for such rehabilitation, permanent partial disability shall not be determined until vocational rehabilitation is completed. However, since both sections address permanent *partial* disability, and permanent *total* disability is at issue here, these provisions are inapplicable.

Additionally, the medical records were not so stale as to preclude the ALJ's accurate assessment of the degree of disability and the need for vocational rehabilitation.

Although the reports considered by the ALJ in his order spanned many years, claimant's long medical history necessitated the ALJ's inquiry about the development of the various afflictions. However, the ALJ specifically noted that he was re-

solving any conflict in the vocational rehabilitation evidence in favor of a physician's testimony given at the first of the 1990 hearings, rather than reports prepared by that doctor in 1987. Likewise, the deposition of another physician, which was taken just days before the first hearing, formed the basis for the ALJ's finding that claimant was permanently prohibited from future gainful employment. And, the ALJ also adopted the opinion of a third physician, who testified at the hearing, and who agreed with the second physician's opinion.

Therefore, given the lengthy medical history in this case, the ALJ could properly rely on some recent reports, while at the same time providing an historical review of the development of claimant's condition.

Petitioners' reliance on *Dziewior v. Michigan General Corp.*, 672 P.2d 1026 (Colo. App.1983), for the proposition that reassessment is necessary, is misplaced. In *Dziewior, supra,* a finding of permanent partial disability was premature because the claimant had not reached maximum medical improvement, and the initial determination of ineligibility of vocational rehabilitation was held invalid because the claimant required additional treatment. The facts here are distinguishable because claimant had already reached maximum medical improvement, had a permanent total disability, and had received only treatment necessary to maintain his condition.

### III.

■ We also reject petitioners' contention that claimant was erroneously granted a protective order which denied them access to a psychological evaluation allegedly performed in Arizona in connection with an action for custody of claimant's grandchildren and precluded petitioners, during discovery and at the hearings, from inquiring about the custody proceedings.

A trial court, for good cause shown, may grant a protective order that discovery may not be had in order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. C.R.C.P. 26(c). This rule is applicable to the ALJ's ruling here. *See Nova v. Industrial Claim Appeals Office,* 754 P.2d 800 (Colo.App.1988) (state rules of civil procedure apply to workers' compensation cases only if the rules do not conflict with workers' compensation statutes); *see also Sheid v. Hewlett Packard,* 826 P.2d 396 (Colo.App.1991) (C.R.C.P. 26 used in workers' compensation case).

Here, we agree with the Panel that the ALJ found, in effect, that claimant established good cause for the protective order. The ALJ relied on an affidavit from claimant's treating psychiatrist that claimant's psychological condition would be aggravated by the production of records from the custody proceedings and that the scope and issues of any custody evaluation of claimant were unrelated to his workers' compensation case. Since petitioners did not present any affidavits to rebut this evidence, it was not improper to issue the protective order.

Petitioners' reliance on the provision now codified as § 8–43–404(4), C.R.S. (1991 Cum.Supp.) is misplaced. This statute allows the ALJ to exercise his discretion in ordering medical testimony, and it specifically provides that confidential communications made for the purpose of treatment and which are unnecessary to a proper understanding of the case need not be disclosed. The medical evidence showed that the custody evaluation was outside the scope of this workers' compensation case, and it therefore follows that this information would not aid in the understanding of this case.

### IV.

We find that the Panel adequately dealt with petitioners' remaining contentions and, therefore, adopt the Panel's reasoning as our own.

Order affirmed.

NEY and VAN CISE,* JJ., concur.