Eva SIGALA, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, Atencio's Market and Royal & SunAlliance, Respondents.

No. 05CA1597.

Colorado Court of Appeals, Div. IV.

Dec. 28, 2006.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

Koncilja & Koncilja, P.C., Lawrence D. Saunders, Pueblo, Colorado, for Petitioner.

John W. Suthers, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Dworkin, Chambers & Williams, P.C., Gregory K. Chambers, C. Sandra Pyun, Denver, Colorado, for Respondents Atencio's Market and Royal & SunAlliance.

### ORDER AFFIRMED

Opinion by Judge ROY.

In this workers' compensation proceeding, Eva Sigala (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) declining to order retroactive payment of temporary total disability (TTD) benefits from Atencio's Market and its insurer, Royal and Sunalliance (collectively employer), for the period of time benefits were suspended pursuant to § 8–42–105(2)(c), C.R.S.2006. We affirm.

The facts are undisputed. Claimant sustained a compensable injury, and employer admitted liability for TTD benefits. Claimant missed an appointment with the authorized treating physician (ATP) on March 15, 2004. Employer then sent a certified letter to claimant notifying her of a rescheduled appointment on March 30, 2004, and advising that her TTD benefits could be suspended if she failed to appear for the appointment.

Claimant failed to appear for the rescheduled appointment, and employer stopped payment of TTD benefits effective March 30. However, claimant attended a medical appointment with the ATP on June 1, 2004, and employer promptly filed an admission reinstating TTD benefits effective that date.

The administrative law judge (ALJ) concluded that the term "suspend" as used in § 8–42–105(2)(c) does not contemplate retroactive payment of suspended TTD benefits once the claimant attends a rescheduled medical appointment with an ATP. Instead, the ALJ held that the term "suspend" effects a permanent loss of TTD benefits for the period of the suspension. Finding that the term "suspend" was ambiguous, the Panel affirmed the ALJ's order.

The sole issue is whether the term "suspend" in § 8–42–105(2)(c) connotes a temporary postponement or a permanent loss of TTD benefits for the period a claimant fails to appear for a medical appointment with the attending physician.

Section 8–42–105(2)(c) provides:

If an employee fails to appear at an appointment with the employee's attending physician, the insurer or self-insured employer shall notify the employee by certified mail that temporary disability benefits may be suspended after the employee fails to appear at a rescheduled appointment. *If the employee fails to appear at a rescheduled appointment, the insurer or self-insured employer may, without a prior hearing, suspend payment of temporary disability benefits to the employee until the employee appears at a subsequent rescheduled appointment.*

(Emphasis added.)

■ In construing a statute, we must give effect to the legislative intent. Hence, statutory terms should be given their plain and ordinary meaning, and the Workers' Compensation Act (Act) should be construed to give consistent, harmonious, and sensible ef-

fect to all its parts. But if statutory language is fairly susceptible of more than one meaning, it is ambiguous, and we may resort to other aids in statutory construction, including the consequences of various constructions. *Union Carbide Corp. v. Indus. Claim Appeals Office*, 128 P.3d 319 (Colo.App.2005); *see BrownsonRausin v. Indus. Claim Appeals Office*, 131 P.3d 1172 (Colo.App.2005) (context may be used in construing ambiguity); *Dillard v. Indus. Claim Appeals Office*, 121 P.3d 301 (Colo.App.2005) (circumstances under which statute was enacted may be considered in resolving ambiguous terms), *aff'd*, 134 P.3d 407 (Colo.2006).

■ Furthermore, we give deference to a reasonable interpretation of a statute adopted by the agency charged with its administration. *Dillard v. Indus. Claim Appeals Office, supra.* Consequently, the Panel's interpretation of a statute will not be set aside unless it is inconsistent with the clear language of the statute or the clear legislative intent. *Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office*, 5 P.3d 385 (Colo.App. 2000).

Claimant does not specifically argue that "suspend" is unambiguous; rather, she asserts that if it is ambiguous, the term should be liberally construed in her favor because the intent of the Act is to provide quick and efficient benefits. While the quick and efficient delivery of benefits is unquestionably part of the General Assembly's intent, other intentions also come into play. *See* § 8–40–102(1), C.R.S.2006. "[W]e must balance liberal construction of the workers' compensation scheme against the legislative purpose" of the particular statute being interpreted. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo.2004).

■ Like the Panel, we conclude that the term "suspend," as used in § 8–42–105(2)(c), is fairly susceptible of different interpretations and is, therefore, ambiguous. *Compare Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office, supra* (as used in the first sentence of § 8–43–404(3), C.R.S.2006, "suspended" connotes a postponement, that is, the payments are temporarily held in abeyance), *with Dziewior v. Michigan Gen. Corp.*, 672 P.2d 1026 (Colo.App.1983) (in the context

of the last sentence of what is now § 8–43–404(3), "suspend" means the cessation of payments for a period of time with the expectation of reinstatement after removal of a disqualifying condition). Accordingly, we turn to the applicable aids for statutory construction.

At the outset, we note that § 8–43–404(3) will be discussed and compared later in this opinion. It states as follows:

So long as the employee, after written request by the employer or insurer, refuses to submit to medical examination or vocational evaluation or in any way obstructs the same, all right to collect, or to begin or maintain any proceeding for the collection of, compensation shall be suspended. If the employee refuses to submit to such examination after direction by the director or any agent, referee, or administrative law judge of the division appointed pursuant to section 8–43–208(1)[, C.R.S. 2006,] or in any way obstructs the same, all right to weekly indemnity which accrues and becomes payable during the period of such refusal or obstruction shall be barred. If any employee persists in any unsanitary or injurious practice which tends to imperil or retard recovery or refuses to submit to such medical or surgical treatment or vocational evaluation as is reasonably essential to promote recovery, the director shall have the discretion to reduce or suspend the compensation of any such injured employee.

Section 8–43–404(3).

Section 8–42–105(2)(c) was enacted in 1991 as part of the general revision of the workers' compensation system. Colo. Sess. Laws 1991, ch. 219, §§ 8–42–105 to 8–42–107 at 1305–1311. The revision gives initial presumptive weight to the ATP's findings of maximum medical improvement and medical impairment. In contrast, the first two sentences of § 8–43–404(3) establish a distinction between "suspending" the right to collect benefits where the claimant refuses to submit to an examination by the employer, and "barring" the right to compensation if the claimant refuses to submit to such examination after having been directed to do so by

the director or an ALJ. We infer from these distinctions that § 8–42–105(2)(c) was deliberately enacted with a view to establishing a more rigorous sanction for a claimant's failure to attend an examination by the "attending physician" than applies when the claimant misses appointments with other medical evaluators or providers. *See Popke v. Indus. Claim Appeals Office*, 944 P.2d 677, 680 (Colo.App.1997) (the "attending physician" is, for most purposes, "interchangeable" with the ATP).

Section 8–43–404(3) uses the term "suspend" in two ways. The first sentence of that statute uses the term "suspended" in the sense of a postponement of the right to collect benefits for refusal to submit to an *examination*. *Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office, supra*. However, the third sentence of § 8–43–404(3) uses the term "suspend" to mean loss of benefits subject to reinstatement of payments in the event the claimant submits to necessary medical *treatment* or vocational rehabilitation. *See Bacon v. Indus. Claim Appeals Office*, 746 P.2d 74 (Colo.App.1987) (authorizing, under a predecessor statute to § 8–43–404(3), a "permanent suspension" of benefits based on claimant's failure to cooperate with established vocational rehabilitation plan); *Dziewior v. Michigan Gen. Corp., supra* ("suspend" as used in predecessor statute means to interrupt or discontinue temporarily with expectation of resumption). Inasmuch as the term "suspend" in § 8–42–105(2)(c) also applies to noncompliance with treatment, it is most analogous to the usage contained in the third sentence of § 8–43–404(3).

Claimant's reliance on four other cases does not persuade us to depart from this conclusion.

As noted, *Magnetic Engineering* interprets § 8–43–404(3), which establishes a two-tiered system for suspending and ultimately barring compensation based on the claimant's medical noncompliance. *MGM Supply Co. v. Industrial Claim Appeals Office*, 62 P.3d 1001 (Colo.App.2002), simply applies this statute without interpretation. These cases are distinguishable because § 8–42–105(2)(c) does not establish a two-tiered system for sanctioning noncooperation, and be-

cause § 8–42–105(2)(c) pertains to a failure to attend appointments only with the attending physician, not any type of physician, whether examining (as in *Magnetic Engineering* and the first two sentences of § 8–43–404(3)) or treating (as in *MGM Supply* and the third sentence of § 8–43–404(3)). Nor does *Imperial Headware, Inc. v. Industrial Claim Appeals Office*, 15 P.3d 295 (Colo.App.2000), support a different result. Although that case states that the "remedy for 'medical noncompliance' is to suspend TTD benefits" under § 8–42–105(2)(c), it simply does not address the issue of whether TTD benefits that are suspended under § 8–42–105(2)(c) may be recovered retroactively. *Imperial Headware, Inc. v. Indus. Claim Appeals Office, supra*, 15 P.3d at 297. The case merely holds that § 8–42–105(2)(c) is the remedy for noncompliance, without discussing the extent of the remedy.

Nor are we persuaded that the result in *Rocky Mountain Cardiology v. Industrial Claim Appeals Office*, 94 P.3d 1182 (Colo. App.2004), supports claimant's position. In that case, the "employer was required to reinstate disability benefits after August 31, 2001," which was the date the claimant attended the rescheduled appointment. *Rocky Mountain Cardiology v. Indus. Claim Appeals Office, supra*, 94 P.3d at 1184. Thus, the result in *Rocky Mountain Cardiology* is consistent with our conclusion here.

We are also not persuaded by claimant's argument that the distinction between § 8–42–105(2)(c) and § 8–42–105(3), C.R.S.2006, supports a different result. The term "suspend" as used in § 8–42–105(2)(c) contemplates reinstatement of TTD benefits after attendance at an appointment. Section 8–42–105(3) does not refer to "suspension" because the right to TTD benefits ends altogether when one of the statutory conditions occurs. *See City of Colorado Springs v. Indus. Claim Appeals Office*, 954 P.2d 637 (Colo.App.1997).

We are also not persuaded by claimant's policy arguments. First, while the Act is based on no-fault principles, courts have not shied away from imposing retroactive sanctions where the claimant has engaged in misconduct proscribed by the statute. *See,*

*e.g.,* § 8–43–402, C.R.S.2006 (sanctions for obtaining benefits through false statements); *Arenas v. Indus. Claim Appeals Office,* 8 P.3d 558 (Colo.App.2000) (policy of deterring employee misconduct was strong enough to authorize retroactive withdrawal of admission of liability where evidence showed injury resulted from intoxication). Furthermore, the efficient administration of benefits requires defined points for the commencement, suspension, and termination of benefits, and § 8–42–105(2)(c) is one example of the use of a bright line to demarcate such events without consideration of fault on the part of the claimant. *See, e.g.,* § 8–42–105(3)(d)(I), C.R.S.2006 (providing for the permanent termination of TTD benefits where a claimant fails to begin modified employment after having been released to and offered such employment).

Second, prior to suspending benefits for failure to attend an appointment, § 8–42–105(2)(c) requires the employer to issue a certified letter to the claimant warning of the potential for suspension if the claimant does not attend a rescheduled appointment. Thus, because the claimant is afforded both sufficient notice of the need to act and an opportunity to comply prior to the imposition of any sanction, there is no due process violation. *See Wecker v. TBL Excavating, Inc.,* 908 P.2d 1186 (Colo.App.1995) (due process requires notice and the opportunity to be heard).

Third, a claimant's right to TTD benefits must be balanced against the employer's interests in insuring prompt treatment of the injury and resolution of the claim at a reasonable cost. *See* § 8–40–102(1). In that respect, we are not persuaded that employers will be encouraged to delay rescheduling an appointment in order to procure a lengthier suspension of benefits. If a claimant is not receiving medical treatment, the claim remains open, and the employer may or may not, depending on the factual circumstances, face the potential for greater permanent disability if the claimant is not treated.

And finally, the failure of a claimant to attend appointments with the ATP may delay a finding of maximum medical improvement (MMI) which would terminate TTD benefits.

Section 8–42–107, C.R.S.2006 (the ATP makes the first determination of MMI).

Thus, we hold, as did the panel, that the term "suspend" as used in § 8–42–105(2)(c) contemplates a forfeiture of TTD benefits for the period of suspension, and claimant was not entitled to TTD benefits for the period from March 30 through June 1, 2004. *Dillard v. Indus. Claim Appeals Office, supra; Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office, supra.*

The order of the Panel is affirmed.

Judge LOEB and JUDGE ROMÁN concur.