Eva SIGALA, Petitioner

v.

ATENCIO'S MARKET; Royal & SunAlliance; and Industrial Claim Appeals Office, Respondents.

No. 07SC73.

Supreme Court of Colorado,
En Banc.

May 12, 2008.

Koncilja & Koncilja, P.C. Lawrence D. Saunders Pueblo, CO, for Petitioner.

Dworkin, Chambers, Williams, York, Benson & Evans, P.C. Gregory K. Chambers, C. Sandra Pyun, Denver, CO, for Respondents, Atencio's Market and Royal & SunAlliance.

John W. Suthers, Attorney General, Laurie Rottersman, Assistant Attorney General, Labor and Personnel Unit, State Services Section, Denver, CO, for Respondent Industrial Claim Appeals Office.

William J. MacDonald, Denver, CO, for Amicus Curiae, Workers Compensation Education Association.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

This workers' compensation case requires us to review the court of appeals' opinion in *Sigala v. Industrial Claim Appeals Office*, 159 P.3d 785 (Colo.App.2006), in which the court held that the claimant, Sigala, is not entitled to temporary total disability benefits for the period of suspension because the term "suspend" as it is used in the temporary total disability benefits provision, § 8–42–105(2)(c), C.R.S. (2007), of the Workers' Compensation Act contemplates "a forfeiture" of those benefits for the period of suspension.[1] Based on our conclusion that the term "suspend" as it is used in the temporary total disability benefits provision means to stop temporarily and not to bar or exclude, we hold that Sigala is entitled to receive the benefits withheld by her employer during the period of suspension. As such, we reverse the judgment of the court of appeals and remand the case to that court to be returned to the Industrial Claim Appeals Office for entry of judgment in favor of Sigala.

## II. Factual Background and Procedural History

The parties have stipulated to the facts of this case. Petitioner–Claimant Eva Sigala sustained a compensable injury, for which Respondent–Employer Atencio's Market admitted liability and paid Sigala temporary total disability benefits through Colorado's workers' compensation system. Under the temporary total disability benefits provision of Colorado's Workers' Compensation Act, a claimant must attend scheduled appointments with his or her attending physician. § 8–42–105(2)(c). If a claimant fails to attend an appointment with his or her attending physician, then the statute requires the employer to notify the claimant that his or her temporary total disability benefits may be suspended if the claimant fails to attend a rescheduled appointment. *Id.* If a claimant fails to attend the rescheduled appointment, then the statute permits an employer to suspend payment of temporary total disability benefits until the claimant attends a subsequent rescheduled appointment. *Id.*

Sigala missed an appointment with her attending physician on March 15, 2004. Pursuant to the statute, Atencio's Market sent Sigala a certified letter notifying her that it could suspend her temporary total disability benefits if she failed to attend a rescheduled appointment on March 30, 2004. Sigala

---

1. We granted certiorari on the following issue: "Whether the court of appeals erred in interpreting the word 'suspend' in section 8–42–105(2)(c), C.R.S. (2007), as allowing for the permanent denial of wage-loss benefits."

failed to attend the rescheduled appointment, and Atencio's Market stopped payment of her benefits on that date. When Sigala finally attended an appointment with her attending physician on June 1, 2004, Atencio's Market promptly reinstated her benefits.

Sigala then requested payment of the benefits withheld by Atencio's Market during the period of suspension, March 30 to June 1, 2004. The parties proceeded to a hearing where an administrative law judge concluded that the term "suspend" as it is used in the temporary total disability benefits provision does not contemplate retroactive payment of suspended benefits, but rather results in a permanent loss of the benefits during the period of suspension. The Industrial Claim Appeals Office affirmed the ALJ's order.

The court of appeals affirmed the ICAO's decision. *Sigala*, 159 P.3d at 789. It reasoned that the temporary total disability benefits provision was "deliberately enacted with a view to establishing a more rigorous sanction for a claimant's failure to attend an examination by the 'attending physician' than applies when the claimant misses appointments with other medical evaluators or providers." *Id.* at 788. Hence, the court of appeals concluded that the term "suspend" as it is used in the statute means "a forfeiture" of temporary total disability benefits for the period of suspension. *Id.* at 789.

Sigala petitioned this court for certiorari review, arguing that the term "suspend" as it is used in the statute means to withhold benefits temporarily, such that the suspended benefits accrue and are paid to the claimant once he or she attends an appointment with his or her attending physician. We granted her petition.

### III. Analysis

■ The outcome of this case of first impression turns on the meaning of the term "suspend" as it is used in the temporary total disability benefits provision of the Workers' Compensation Act, which states:

> If an employee fails to appear at an appointment with the employee's attending physician, the insurer or self-insured employer shall notify the employee by certified mail that temporary disability benefits

may be suspended after the employee fails to appear at a rescheduled appointment. *If the employee fails to appear at a rescheduled appointment, the insurer or self-insured employer may, without a prior hearing, suspend payment of the temporary disability benefits to the employee until the employee appears at a subsequent rescheduled appointment.*

§ 8–42–105(2)(c) (emphasis added).

Sigala argues that the term "suspend" as it is used in the statute means to withhold temporarily. She contends that when the legislature intends to permanently deprive a claimant of benefits it does not use the term "suspend," but rather uses more forceful terms in phrases such as "shall be barred," "shall forfeit all right to compensation," and "shall not be able to recover, recoup, or otherwise be retroactively entitled to any of the benefits." Atencio's Market argues for the opposite construction. It maintains that the court of appeals correctly interpreted the term to mean a permanent forfeiture of temporary total disability benefits for the period of suspension and construed the statute consistently with the legislative intent underlying the 1991 revision of Colorado's Workers' Compensation Act.

■ An agency's conclusions of law are reviewed de novo. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004). Although a reviewing court gives some deference to an agency's reasonable construction of a statute, the agency's interpretation will be overturned on appeal if it is "clearly erroneous, arbitrary, or otherwise not in accordance with the law." *Id.; see also Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office*, 5 P.3d 385, 389 (Colo.App. 2000).

■ In construing the term "suspend" as it is used in the temporary total disability benefits provision, we must adhere to the well-established rules of statutory construction. Our primary goal is to give effect to the intent of the legislature. *Davison*, 84 P.3d at 1029. To accomplish that goal, the terms of a statute should be given their plain and ordinary meaning. *Id.*

■ The term "suspend" means either "to stop temporarily," as Sigala argues, or "to bar or exclude as a penalty," as Atencio's Market contends. *Webster's New World College Dictionary* 1348 (3d ed.1996); *see also Black's Law Dictionary* 1460 (7th ed.1999) (defining the term "suspend" to mean "to interrupt; postpone; defer"). Neither the temporary total disability benefits provision nor any other statute in the Workers' Compensation Act defines the term "suspend," and whether the term means to stop payment of benefits temporarily, or to bar or exclude benefits permanently is not obvious. *See* § 8–42–105(2)(c). If statutory language is fairly susceptible to more than one meaning, as the term "suspend" is here, then the language is ambiguous, and we may resort to other aids in statutory construction, including the legislative declaration and the consequences of various constructions. *See Davison,* 84 P.3d at 1029.

■ As stated in the Act's legislative declaration, the General Assembly intended for the Workers' Compensation Act to "be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation . . . ." § 8–40–102, C.R.S. (2007). Thus, a primary purpose of the Workers' Compensation Act is to compensate injured workers "regardless of fault." *Colo. Springs Disposal v. Indus. Claim Appeals Office,* 58 P.3d 1061, 1063 (Colo.App.2002). In a previous case, we noted that the Workers' Compensation Act "is intended to be remedial and beneficial in purpose, and should be liberally construed in order to accomplish these goals." *Davison,* 84 P.3d at 1029 (internal quotation marks omitted).

The temporary total disability benefits provision was enacted in 1991 as part of the General Assembly's general revision of the Workers' Compensation Act. *See* ch. 219, sec. 13, § 8–42–105(2)(c), 1991 Colo. Sess. Laws 219, 1305–06; *see also* John G. Salmon & Francine R. Salazar, *1991 Update on Workers' Compensation Law,* 20 *Colo. Law.* 2223, 2228 (Nov.1991). Prior to the enactment of the temporary total disability benefits provision, a claimant's failure to attend an appointment with an attending physician was subject to sanctions under what is now section 8–43–404(3), C.R.S. (2007). *See id.* That provision of the Workers' Compensation Act governs penalties and enforcement when a claimant refuses to submit to a medical examination or evaluation. § 8–43–404(3); *see Bacon v. Indus. Claim Appeals Office,* 746 P.2d 74, 75 (Colo.App.1987) (holding that a claimant's benefits were rightly suspended under what is now section 8–43–404(3) when the claimant refused to cooperate with a vocational rehabilitation plan); *Dziewior v. Mich. Gen. Corp.,* 672 P.2d 1026, 1029–30 (Colo.App.1983) (holding that a claimant's benefits were rightly suspended under what is now section 8–43–404(3) when the claimant did not return to the authorized physician for treatment).

The penalties and enforcement provision requires suspension of compensation to a claimant who refuses to submit to a medical examination or vocational evaluation as requested in writing by the employer; bars weekly indemnity to a claimant who refuses to submit to such an examination as ordered by the director or any agent, referee, or ALJ of the division; and permits the director of the division to reduce or suspend compensation to a claimant who refuses to submit to treatment or evaluation as is reasonably essential to promote recovery. § 8–43–404(3). The statute provides:

> So long as the employee, after written request by the employer or insurer, refuses to submit to medical examination or vocational evaluation or in any way obstructs the same, *all right to collect, or to begin or maintain any proceeding for the collection of, compensation shall be suspended.* If the employee refuses to submit to such examination after direction by the director or any agent, referee, or administrative law judge of the division . . . or in any way obstructs the same, *all right to weekly indemnity which accrues and becomes payable during the period of such refusal or obstruction shall be barred.* If any employee persists in any unsanitary or injurious practice which tends to imperil or retard recovery or refuses to submit to such medical or surgical treatment or voca-

tional evaluation as is reasonably essential to promote recovery, *the director shall have the discretion to reduce or suspend the compensation of any such injured employee.*

*Id.* (emphasis added).

Given the relationship between the penalties and enforcement provision and the temporary total disability benefits provision, and given the General Assembly's use of the term "suspend" in both provisions, the court of appeals focused its analysis on constructions of the term "suspend" as it is used in the penalties and enforcement provision. *Sigala,* 159 P.3d at 787–89. Looking to prior Colorado case law, the court of appeals determined that the penalties and enforcement provision uses the term "suspend" in two ways. *Id.* at 788.

Relying on the holding in *Magnetic Engineering,* 5 P.3d at 389, the court of appeals determined that the term "suspend" is used in the first sentence of the penalties and enforcement provision to mean a mere postponement of the right to collect benefits due to a claimant's refusal to submit to an examination. *Sigala,* 159 P.3d at 788. Relying on the holdings in *Dziewior,* 672 P.2d at 1029–30, and *Bacon,* 746 P.2d at 75, the court of appeals then found that the term "suspend" is used in the third sentence of the penalties and enforcement provision to mean a permanent loss of benefits due to a claimant's refusal to submit to treatment or vocational rehabilitation. *Sigala,* 159 P.3d at 788. Based on this construction of the penalties and enforcement provision, as well as its determination that this case involves noncompliance with treatment, the court of appeals concluded that the meaning of the term "suspend" as it is used in the temporary total disability benefits provision is most analogous to the usage in the third sentence of the penalties and enforcement provision. *Sigala,* 159 P.3d at 789.

Our review of the relevant case law leads us to a different conclusion. Because neither *Dziewior* nor *Bacon* necessarily suggests that the term "suspend" as it is used in the penalties and enforcement provision means a permanent loss of benefits, the court of ap-

peals' construction of the penalties and enforcement provision is unpersuasive.

In *Dziewior,* the claimant's temporary disability benefits were terminated by a hearing officer upon a showing that the claimant did not return to her authorized physician. 672 P.2d at 1029. The hearing officer reasoned that the claimant, by refusing treatment, had reached maximum medical improvement. *Id.* The question before the *Dziewior* court was whether the claimant was entitled to a resumption of benefits pursuant to the penalties and enforcement provision when she subsequently agreed to undergo treatment. *Id.* at 1028–30. There, the court of appeals held that the claimant was entitled to a resumption of temporary disability benefits because by deciding to undergo treatment, the claimant removed the basis for cessation of the benefits. *Id.* at 1029–30. Applying the third sentence of the penalties and enforcement provision, the court of appeals defined the term "suspend" to mean "[t]o interrupt; to cause to cease for a time; ... to discontinue temporarily, but with an expectation or purpose of resumption." *Id.* at 1030 (quoting *Black's Law Dictionary* 1297 (5th ed.1979) ). The court of appeals further explained that "the statute permits a resumption of benefits after a period of suspension when, as here, the disqualifying condition has been removed." *Id.*

The *Bacon* court applied the holding in *Dziewior* to a case in which a claimant refused to participate in training for employment. 746 P.2d at 75. Upholding the Industrial Commission's conclusion that the claimant's failure to cooperate was a continuing detriment to the vocational rehabilitation plan and thereby constituted a "permanent suspension of temporary total disability benefits" under the penalties and enforcement provision, the court of appeals explained that the claimant was not entitled to a resumption of benefits because the disqualifying condition had not been removed. *Id.* (citing *Dziewior,* 672 P.2d at 1030).

Neither case addresses whether a claimant is entitled to retroactive payment of the benefits withheld during the period of suspension. Without more, we cannot say that the term "suspend" as it is used in the third

sentence of the penalties and enforcement provision connotes a permanent loss of benefits. Nor can we say that the temporary total disability benefits provision was "deliberately enacted with a view to establishing a more rigorous sanction for a claimant's failure to attend an examination by the 'attending physician' than applies when the claimant misses appointments with other medical evaluators or providers." *Sigala,* 159 P.3d at 788.

Atencio's Market argues that we should follow *Maryott v. J & H Properties,* W.C. No. 4-157-363, 1997 WL 2751554, at *3–4 (Colo. Indus. Claim Appeals Office Apr. 28, 1997), in which the ICAO determined that the term "suspend" as it is used in the temporary total disability benefits provision means "an absolute denial of benefits for a period of time, subject to reinstatement if the claimant cooperates." The facts in *Maryott* are nearly identical to the facts in this case. There, a claimant failed to attend an appointment with his attending physician. *Id.* at *1. Pursuant to the temporary total disability benefits provision, the claimant's employer sent a certified letter to the claimant's last known address notifying the claimant that his benefits could be suspended if he failed to attend a rescheduled appointment. *Id.* The claimant failed to attend the rescheduled appointment, and his temporary total disability benefits were suspended. *Id.* The benefits were reinstated when the claimant attended an appointment with his attending physician. *Id.*

On appeal, the claimant argued that the ALJ erred in "denying" rather than "suspending" benefits for the period of suspension. *Id.* at *3. Citing the penalties and enforcement provision, the claimant contended that the term "suspend" means a temporary withholding of benefits and that the benefits must be restored when the disqualifying condition is removed. *Id.* The ICAO rejected the claimant's argument, reasoning, as the court of appeals did in this case, that the penalties and enforcement provision uses the term "suspend" in two ways and that usage of the term "suspend" in the temporary total disability benefits provision is most analogous to usage of the term in the third

sentence of the penalties and enforcement provision. *Id.* at *4. As support for its conclusion, the ICAO cited Dziewior and Bacon. *Id.*

Although the court of appeals did not cite *Maryott* as an authority upon which it relies, its analysis mirrors that found in *Maryott.* Our review of the case law reveals that there is no decision other than *Maryott* that gives two meanings to the term "suspend" as it is used in the penalties and enforcement provision. As we explained above, neither *Dziewior* nor *Bacon* necessarily suggests that the term "suspend" as it is used in the penalties and enforcement provision means a permanent loss of benefits. Hence, we decline to base our reasoning in this case on that construction.

Instead, we agree with Sigala that if the legislature had intended to permanently deprive a claimant of temporary total disability benefits, then it would have used a term such as "bar" or "exclude," rather than the term "suspend." In *Magnetic Engineering,* the court of appeals construed the first and second sentences of the penalties and enforcement provision to establish a two-tiered system of sanctions for the refusal to submit to a medical examination or evaluation. 5 P.3d at 388. The court of appeals in that case distinguished the temporary nature of the term "suspend" from the permanent nature of the term "bar":

> The term "suspended" means temporarily disbarred, inactive, inoperative, or held in abeyance. *Webster's Third New International Dictionary* 2303. On the other hand, the term "barred" connotes a permanent withholding or prohibition. *See Webster's Third New International Dictionary* 174. Thus, ... a temporary suspension of benefits may be followed by a reinstatement as long as there has been no order entered which has directed the claimant to submit to the examination.

*Id.* at 389.

■ "[T]he meaning attributed to words or phrases found in one part of a statute should be ascribed to the same words or phrases throughout the statute, absent any manifest indication to the contrary." *Huddleston v. Bd. of Equalization,* 31 P.3d 155,

159 (Colo.2001) (citing *Colo. Common Cause v. Meyer*, 758 P.2d 153, 162 (Colo.1988)). In addition, if the General Assembly had intended for the term "suspend" to mean a permanent withholding, then it would have clearly stated so. As explained by the court of appeals in *Magnetic Engineering*, the legislature used the term "barred" in the penalties and enforcement provision to mean a permanent withholding. 5 P.3d at 389. The legislature chose similarly clear language in other provisions of the Workers' Compensation Act. For instance, anyone who "willfully makes a false statement or representation" for the purpose of obtaining benefits or compensation under the Workers' Compensation Act "*shall forfeit* all right to compensation." § 8–43–402, C.R.S. (2007) (emphasis added). In addition, "any individual who is otherwise entitled to benefits under [the Workers' Compensation Act] *shall neither receive nor be entitled* to such benefits for any week following conviction during which such individual is [incarcerated]." § 8–42–113(1), C.R.S. (2007). Upon his or her release from confinement, the individual "shall be restored to the same position with respect to entitlement to benefits," except that the individual "*shall not be able to recover, recoup, or otherwise be retroactively entitled to any of the benefits to which the individual would have been entitled.*" § 8–42–113(2), C.R.S. (2007) (emphasis added).

The *Magnetic Engineering* court did not address whether a claimant is entitled to retroactive payment of the benefits withheld during the period of suspension, but did explain that a suspension of benefits, even if temporary, "provides adequate incentive for the claimant to cooperate with the employer's request for a medical examination." 5 P.3d at 389. The court also explained that the ALJ lacks grounds to bar benefits unless a claimant's refusal to submit to a medical examination results in a "continuing and detrimental effect on [the] claimant's condition." *Id.*

The Workers' Compensation Act should be construed to give consistent, harmonious, and sensible effect to all its parts. *McBride v. Indus. Comm'n*, 97 Colo. 166, 169, 49 P.2d 386, 388 (1935) ("To give full

import to the purposes of the workmen's compensation act, all portions thereof should be read together and harmonized, if possible."). Hence, the meaning of the term "suspend" as it is used in the temporary total disability benefits provision should be construed to work hand-in-hand with the other provisions of the act. The General Assembly intended for the Workers' Compensation Act to "be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation," § 8–40–102, and to compensate injured workers "regardless of fault," *Colo. Springs Disposal*, 58 P.3d at 1063. Moreover, the Workers' Compensation Act is "remedial and beneficial in purpose." *Davison*, 84 P.3d at 1029 (internal quotation marks omitted).

In light of these purposes, we conclude that a suspension of benefits, even if temporary, provides an adequate incentive for the claimant to cooperate with the employer to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers. *See Magnetic Eng'g, Inc.*, 5 P.3d at 389. We further conclude that other provisions of the Workers' Compensation Act, such as the penalties and enforcement provision, make more stringent sanctions available when the claimant's actions so demand. *See id.* Such a construction gives meaning and purpose to the term "suspend" as it is used in the temporary total disability benefits provision without encroaching upon the meaning and purpose of the term as it is used in the first sentence of the penalties and enforcement provision.

For these reasons, we hold that the term "suspend" as it is used in the temporary total disability benefits provision means to stop temporarily and not to bar or exclude. Hence, the temporary total disability benefits withheld by Atencio's Market between March 30 and June 1, 2004, must be paid to Sigala. If Atencio's Market believes that Sigala imperiled or retarded her recovery by refusing to submit to medical treatment, then it may take action under the

penalties and enforcement provision of the Act.

## IV. Conclusion

We reverse the judgment of the court of appeals and remand the case to that court to be returned to the ICAO for entry of judgment in favor of Sigala.

Justice EID, dissenting.

The majority finds that the term "suspend" as used in the temporary total disability ("TTD") benefits provision, section 8–42–105(2)(c), C.R.S. (2007), is ambiguous, in that it may mean a temporary or permanent suspension of benefits. Maj. op. at 43. It then holds that the term means a temporary suspension because the legislature would have used different terms, such as "bar" or "exclude," had it intended a permanent suspension in benefits. *Id.* at 45–46. In my view, the majority's focus on the word "suspend" is misplaced; the question is *what* is being suspended. Section 8–42–105(2)(c) allows an insurer to suspend "payment" of compensation when an employee misses two appointments with his or her attending physician. That section does not say that compensation accrues during the period of suspension; rather, payment simply resumes under the statutory language when the employee "appears at a subsequent rescheduled appointment." The majority concludes otherwise, and I therefore respectfully dissent from its opinion.

Section 8–42–105(2)(c) states, "If the employee fails to appear at a rescheduled appointment, the insurer or self-insured employer may, without a prior hearing, suspend payment of the temporary disability benefits to the employee until the employee appears at a subsequent rescheduled appointment." In my view, there is no ambiguity in the term "suspend"; it means to discontinue or stop a particular activity, with the possibility that the activity may resume in the future. *See, e.g., Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office,* 5 P.3d 385, 389 (Colo.App. 2000) ("The term 'suspended' means temporarily disbarred, inactive, inoperative, or held in abeyance.") (citation omitted); *Dziewior v. Mich. Gen. Corp.,* 672 P.2d 1026, 1030 (Colo.

App.1983) (defining suspend as "[t]o interrupt; to cause to cease for a time; ... to discontinue temporarily, but with an expectation or purpose of resumption") (citation and quotation omitted). The insurer has no obligation to pay benefits during the period of suspension, and the statute does not allow accrual of benefits during the suspension period. Consequently, no accrued benefits need be paid to the employee once the suspension is lifted.

The majority comes to the opposite conclusion based on the ambiguity it perceives in the term "suspend." Maj. op. at 46. But contrary to the majority's view, *id.* at 43, the question is not whether there is a "permanent" or "temporary" suspension; all suspensions are in a sense temporary because they may at some point be lifted. The question is *what* is being suspended; here, it is the payment of benefits. Section 8–42–105(2)(c) explicitly lifts the insurer's obligation to pay benefits during the period of suspension, and that obligation does not resume "until the employee appears at a subsequent rescheduled appointment." The statute does not speak of accrued benefits because no benefits accrue.

The majority imports the concept of accrual of benefits from another provision of the statute, the so-called penalties and enforcement provision. *See* § 8–43–404(3), C.R.S. (2007). Under the penalties and enforcement provision, if an employee:

> refuses to submit to medical examination or vocational evaluation or in any way obstructs the same, all right to collect, or to begin or maintain any proceeding for the collection of, compensation shall be suspended. If the employee refuses to submit to such examination after direction by the director or any agent, referee, or administrative law judge of the division ... or in any way obstructs the same, *all right to weekly indemnity which accrues and becomes payable during the period of such refusal or obstruction shall be barred.*

(Emphasis added.) The majority relies upon this portion of section 8–43–404(3) to demonstrate that, if the General Assembly had intended to prevent employees from receiving accrued benefits once the suspension was

lifted, it would have used the term "bar." Maj. op. at 45. But this comparison is inapposite because the provision we examine today—section 8–42–105(2)(c)—does not authorize any accrual of benefits during the time that payment is suspended. Thus, the majority's clear statement rule, which requires the legislature to use words such as "bar" or "exclude" when it intends to deprive an employee of benefits, maj. op. at 45, makes no sense in this case because there were no accrued benefits to be barred or excluded.

Moreover, the majority's clear statement rule does damage to the third sentence of section 8–43–404(3), which provides:

> If any employee persists in any unsanitary or injurious practice which tends to imperil or retard recovery or refuses to submit to such medical or surgical treatment or vocational evaluation as is reasonably essential to promote recovery, the director shall have the discretion to *reduce or suspend the compensation* of any such injured employee.

(Emphasis added.) This third sentence, like section 8–42–105(2)(c), suspends payment of benefits, without authorizing the accrual of benefits during the period of suspension. Yet under the majority's interpretation, because the General Assembly used the term "suspend" instead of "bar" or "exclude," benefits must accrue during the period of suspension and be paid to the employee once the suspension is lifted. Thus, after today's decision, the director will have no "discretion" to discontinue benefits to an employee who has "imperil[ed]" his or her recovery, even though the statutory language allows such action to be taken.

Because I believe the majority improperly interprets section 8–42–105(2)(c) to require that benefits be paid to Sigala for the period of suspension, I respectfully dissent from its opinion.

I am authorized to state that Justice COATS joins this dissent.

* Justice Coats and Justice Eid would grant the